| TARMSTRONG, Judge.
This is a personal injury action arising from an altercation and a related truck-pedestrian collision near a bar. Several defendants were sued. The bar was sued by the plaintiff because it sold alcohol to a minor, who was involved in the altercation and the collision. The jury found the bar liable for a portion of the actual and punitive damages. The bar appeals as to liability. Because the record is totally devoid of evidence that the bar committed any affirmative act to increase the peril posed by the minor’s intoxication (assuming he was intoxicated), we must reverse the judgment of the trial court. Additionally, because the punitive damages statute does not allow the imposition of punitive damages against persons who allegedly have contributed to a driver’s intoxication, punitive damages cannot, in any event, be imposed against the bar.
The plaintiff, Matthew Berg, was a Tulane University student at the time of the incident at issue. On June 4, 1994, after attending a comedy concert in downtown New Orleans with a friend, he and his friend stopped at a bar in uptown New Orleans named Waldo’s. (Waldo’s is not the defendant bar). His friend then | ^went home and Mr. Berg went to Dino’s, which was an uptown pizza stand, to order a pizza to be delivered. After ordering the pizza, Mr. Berg then proceeded on foot up the street. Mr. Berg testified that, at this time, he was “mildly intoxicated” from beer he had consumed at Waldo’s but that he was coherent and under control.
About the same time that Mr. Berg left Dino’s, Philip Zummo and four of his friends came out of The Boot which was a bar next to Dino’s. Mr. Zummo was a minor, six days short of his eighteenth birthday at that time. He testified that he had gone into The Boot, was not asked for any identification or proof of his age, and bought a pitcher of beer. Mr. Zummo testified that he drank “at most” half of the pitcher of beer. Mr. Zummo and his friends then left The Boot and encountered Mr. Berg, who had just left Dino’s pizza stand next door.[1]
Mr. Berg and Mr. Zummo gave diametrically opposite testimony as to the course of their encounter. Mr. Berg testified that Mr. Zummo or one of his friends asked Mr. Berg what fraternity he belonged to and then, without waiting for a reply, suddenly, inexplicably and with no provocation, two of Mr. Zummo’s friends attacked Mr. Berg and struck him twice in the head. Mr. Berg testified that he then grabbed Mr. Zummo in a head lock, but that he, Mr. Berg, wound up on the ground with his assailants kicking him.
Mr. Zummo testified that, when he and his friends encountered Mr. Berg on the street, Mr. Berg appeared very intoxicated and that Mr. Berg suddenly, inexplicably and with no provocation charged Mr. Zum-mo, tackled him to the | aground and began punching him. Mr. Zummo testified that his friends got Mr. Berg off of him. One of Mr. Zummo’s friends testified that he kicked Mr. Berg to get him off of Mr. Zummo. The defendant bar introduced some photographs into evidence, which Mr. Zummo testified were taken the next *59 morning by his father, which he testified show bruises on his face and arm from being punched by Mr. Berg.
Both Mr. Berg and Mr. Zummo testified that the altercation ended after just a few minutes and that Mr. Zummo and two of his friends went and got into Mr. Zummo’s pickup truck. Mr. Zummo got behind the wheel to drive. Mr. Zummo’s other two friends headed for a different vehicle. At this point, the testimony of Mr. Berg and Mr. Zummo again sharply diverge. Mr. Berg testified that he got up and was standing in the street about twenty feet in front of Mr. Zummo’s truck when Mr. Zummo gunned the engine and drove rapidly straight at him. Mr. Berg testified that he was unable to avoid being hit by the truck.
Mr. Zummo testified that Mr. Berg came up beside the truck while it was still parked and began beating on the truck and shouting at Mr. Zummo to come out and finish the fight. Mr. Zummo testified that he then pulled away, that Mr. Berg ran alongside the truck for a short distance, perhaps grabbed the side mirror, and then appeared to stumble and fall. Mr. Zummo continued to drive away and went home. One of Mr. Zummo’s friends who was in the truck testified consistently with Mr. Zummo.
RA bystander, Jill McCoy, saw part of the incident at issue. From her testimony, she saw only the very end of the fight, but she did not have a good view of that and she did not'see how the fight started. She testified that she saw some part of the truck hit Mr. Berg although she testified that Mr. Berg was only a few feet from the truck when it started moving.
Defendant L.M.J.D., Inc., which operated The Boot, called as a witness the doorman who had worked the night in question. The doorman testified that it was his practice at that time to ask for identification for proof of age. He also testified that there were signs at The Boot which said that minors were not allowed. He further testified that the beer sold in pitchers was light beer that had less alcohol than regular beer.
Mr. Berg sued Mr. Zummo, Mr. Zum-mo’s friends and L.M.J.D., Inc. Mr. Zum-mo and his friends settled. The case proceeded to trial as to L.M.J.D., Inc. The jury answered special jury interrogatories finding liability and that the fault for Mr. Berg’s damages was attributable 40% to L.M.J.D., Inc., 25% to Mr. Berg, 30% to Mr. Zummo, 2% to Madigans and 1.5% each to two of Mr. Zummo’s friends. The jury found Mr. Berg’s general damages to be $50,000 and his past medical expenses to be $3,600. The jury answered additional special jury interrogatories finding liability for punitive damages due to Mr. Zummo’s driving while intoxicated and that the responsibility for Mr. Zummo’s intoxication was attributable 45% to L.M.J.D., Inc., 15% to Madigans and 40% to Mr. Zummo. The jury fixed punitive damages at $50,000. The trial court entered judgment in ^accordance with the jury’s verdict and, thus, found L.M.J.D., Inc. liable for 40% of the $53,600 actual damages and 45% of the $50,000 punitive damages. L.M.J.D., Inc. appeals.
L.M.J.D., Inc. argues on appeal that it cannot be held liable because there was no evidence that L.M.J.D., Inc. did any “affirmative act” which “increased the peril” posed by Mr. Zummo’s intoxication. We agree. The applicable law was discussed in great detail in our recent decision in Godfrey v. Boston Old Colony Ins. Co., 97-2568 (La.App. 4 Cir. 5/27/98), 718 So.2d 441, writ denied, 98-2487 (La.11/20/98), 729 So.2d 563. In Godfrey we explained that, in cases in which a bar has sold alcohol to an underage person, and the underage person has then been involved in a tort as a result of intoxication, the application of general negligence principles and the duty/risk analysis required that, before the bar can be held liable, it must be proven that (1) the bar failed to exercise the care of a reasonable person under the circumstances and (2) *60 the bar committed some “affirmative act” which “increased the peril” posed by the minor’s intoxication. 718 So.2d at 452, 453-54. Merely serving alcohol to an underage person who becomes intoxicated and causes injury to others or to himself is not an “affirmative act” which can result in liability of the bar. Mills v. Harris, 615 So.2d 583, 535 (La.App. 3rd Cir.1993). See also Thrasher v. Leggett, 373 So.2d 494 (La.1979) (applying same rule to sales of alcohol to persons of legal drinking age). “Fundamentally, a bar owner’s liability under Thrasher pivots on whether the injury results merely from the intoxicated condition or whether it results from an affirmative act (e.g., ejectment) by the |r,owner which increases the peril to the intoxicated patron.” Casenote, “Thrasher v. Leggett: Judicial Restraint In The Imposition of Liquor Vender Liability”, 40 La. L.Rev. 938, 948 (1980) (quoted in Godfrey).
In the present case, there is simply no evidence whatsoever of any “affirmative act” at all which could support liability of L.M.J.D., Inc. Indeed, the evidence is undisputed that Mr. Zummo and his four friends simply left The Boot in an ordinary way and encountered Mr. Berg about a block or so away. The bar had nothing to do with the altercation and its aftermath which all occurred away from the bar’s premises. As a matter of law, there is a complete absence of any basis to impose any liability at all on L.M.J.D., Inc.
L.M.J.D., Inc. also argues that the punitive damages statute does not allow the imposition of punitive damages against persons who have allegedly contributed to the driver’s intoxication. We agree. What is apparently the only published decision on point, Bourque v. Bailey, 93-1657 (La.App. 3 Cir. 9/21/94), 643 So.2d 236, writ denied, 94-2619 (La.12/16/94), 648 So.2d 392, in a persuasive opinion, holds that those who are alleged to have contributed to the intoxication of a driver (like L.M.J.D., Inc. in the present case) cannot be held liable for punitive damages. Compare Curtis v. Rome, 98-0966 (La.App. 4 Cir.5/5/99), 735 So.2d 822 (discussing Bourque ), writ denied, 99-1617 (La.10/1/99), 748 So.2d 441. We previously have held that, absent “express authorization by statute”, punitive damages are not allowed in Louisiana. Price v. DOTD, 608 So.2d 203, 208 (La.App 4th Cir.1992), writ withdrawn, 613 So.2d 985 (La.1993). Also, we previously 17held that punitive damages under Article 2315.4 are “designed to penalized those who, under the influence of alcohol, create a hazard by the unsafe movement or placement of their vehicle”. Elder v. Rowe, 94-1599 (La.App. 4th Cir. 3/29/95), 653 So.2d 718, 722. Both our Price and Elder decisions suggest that we should not view Article 2315.4 punitive damages liability broadly so as to extend it to persons who contribute to the intoxication of a driver.
For the foregoing reasons, we reverse the judgment of the trial court.

REVERSED.

. Mr. Zummo also testified that, prior to going to The Boot, he had been at a bar named Madigan’s but had not attempted to buy any beer at Madigan’s.