786 So.2d 708 (2001)
Matthew BERG
v.
Philip ZUMMO, et al.
No. 2000-C-1699.
Supreme Court of Louisiana.
April 25, 2001.
*709 Gladstone N. Jones, III, Andrew L. Kramer, Randall A. Smith, New Orleans, Counsel for Applicant.
Patrick C. Grace, Darleen M. Jacobs, Alfred A. Sarrat, Jr., New Orleans, Counsel for Respondent.
*710 Vincent J. Booth, Metairie, Counsel for Mothers Against Drunk Driving (Amicus Curiae).
VICTORY, J.[*]
We granted this writ to determine whether the court of appeal erred in reversing a jury verdict against the defendant, LMJD, Inc., (The "Boot"), upon finding (1) that liability cannot be imposed against a bar owner who serves alcohol to a minor who becomes intoxicated and causes injuries to others, and (2), that punitive damages cannot be assessed against a bar owner under La.Civ.Code art. 2315.4. After reviewing the record and the applicable law, we reverse the appellate court's finding that merely serving alcohol to a minor can never result in liability; however, we affirm the appellate court's ruling that the punitive damages statute does not allow the imposition of punitive damages against those who have contributed to the driver's intoxication.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Matthew Berg ("Berg"), filed a negligence action against Philip Zummo ("Zummo"), several of his companions, and Zummo's insurance company, alleging that on June 5, 1994, at approximately 1:30 a.m., as Berg approached the intersection of Audubon Street and Zimple Street in New Orleans, Zummo and four companions, approached him, and, with no warning, accosted and beat him. Then, in leaving the scene, Zummo hit Berg with his truck, causing him serious bodily injury.
Zummo was criminally charged with aggravated battery as a result of this incident. At his criminal trial, which resulted in a not guilty verdict, Zummo testified that he was only 17 years old at the time of the incident and that he had been drinking beer inside The Boot, a bar in the university area, immediately before the incident. Based on this testimony, Berg amended his petition to name The Boot as a defendant and alleged that The Boot's negligence in serving Zummo alcohol was a proximate cause of his injuries. All of the parties except The Boot reached a settlement with Berg. On May 12, 1998, a four day trial commenced with The Boot as the only remaining defendant.
At trial, Berg testified that on the night of June 4, 1994, he had attended a concert with a friend and then stopped at Waldo's, another bar in the university area. He admitted to being mildly intoxicated. From there, he walked to Dino's, which is located next door to The Boot on Zimple Street, to order a pizza to be delivered to his residence around the corner. On his way home, as he walked up Zimple Street to Audubon Street, he encountered Zummo and his four friends, who, he testified, appeared intoxicated. He testified that they exchanged cordial greetings, asked him what fraternity he was in, and then, for no apparent reason, one member of the group began to punch him, and another member jumped from the back of Zummo's truck and knocked him to the ground, while the other men repeatedly kicked him. After the men got in Zummo's truck, which was parked the wrong way down Audubon Street facing Zimple Street, Berg testified that he stood several yards in front of the truck with his hands raised in order to stop the truck from leaving so that he could call the police. He testified that Zummo revved up his engine, headed directly towards him, and hit him, causing "significant trauma with loss of consciousness, trauma to head," including several lacerations and bruises, a broken nose, a *711 torn tendon in his inner lip, a concussion, and scratches on his abdomen.
Zummo testified that on the night of June 4, 1994, he went to Madigan's Bar with some friends, where he did not drink any alcohol, and then they went to The Boot sometime after midnight. He testified that when he entered The Boot, he was not asked for any identification or proof of his age. He ordered a pitcher of beer and drank "at most" half of the pitcher. He testified that they then played pool, but only stayed at The Boot for about 15 minutes. As he and his friends walked from The Boot down Zimple Street to his truck on Audubon Street, they encountered Berg who was saying something they couldn't understand and who appeared intoxicated. Zummo testified that Berg then tackled him for no reason and a fight ensued, and that his friends had to get Berg off of him by kicking him. Zummo and two of his friends then got into his truck and Berg came over to the driver's side of the truck, banging on the truck and demanding that Zummo get out and continue the fight. Zummo then started the truck and took off, going the wrong way down Audubon Street and then backing up down Zimple Street to Broadway. He testified that he was trying to get out in a hurry because he was afraid Berg was going to break the window and hurt him. Zummo testified that Berg ran alongside the truck and might have grabbed side mirror, and then stumbled and fell back. He testified that he was not intoxicated at the time of the incident and that nothing The Boot did contributed to his fight with Berg. Zummo's friends corroborated various parts of Zummo's testimony at trial.
Jill McCoy testified that on the night on June 4, 1994, she was driving down Zimple to turn on Audubon when she witnessed four or five guys beating up Berg. She testified that the fight broke up and the guys pushed Berg on the grass and all jumped in Zummo's truck. Then Berg walked toward the truck and someone in the bed of the truck threw a drink on Berg, and then got into the cab of the truck. She testified that Zummo then floored the truck or "screeched it" and she saw Berg fly up on the hood and then fly a little bit across the street. She testified that Berg was three feet in front of the truck when the truck accelerated and that the truck hit Berg somewhere around the front headlight. It did not appear to her that Berg had time to avoid being hit. When the truck took off, it kind of fish tailed and then went the wrong way down the street. She did not see how the fight began.
The pizza worker at Dino's testified that when Berg ordered the pizza, he did not appear particularly intoxicated. He also testified that he noticed that Zummo's blue truck was parked in its location for 45-60 minutes.
The bouncer at The Boot on the night in question testified that it was The Boot's policy to check everyone's ID upon entering and that he regularly did so. He also testified that The Boot served only Natural Light in its pitchers. Another employee of The Boot testified that Natural Light has about 15% less alcohol than regular beer.
After a four day jury trial, the jury rendered a verdict in favor of Berg. In response to Special Jury Interrogatories, the jury found that the actions of The Boot "in serving alcoholic beverages to Philip Zummo was a cause in fact although it may not be the only cause in fact of the damages suffered by Matthew Berg as a result of the incident of June 5, 1994." Pursuant to this finding, they awarded general damages in the amount of $50,000.00 and past medical expenses in the amount of $3,600.00, and attributed *712 fault in the following percentages: 40% to The Boot; 25% to Berg; 30% to Zummo, 2% to Madigan's, and 1.5% each to two of Zummo's friends. Next, the jury found that Zummo exhibited a wanton or reckless disregard for the rights and safety of Berg and that he was intoxicated when he drove away from the scene of the incident in his truck. Further, the jury found that the intoxication of Zummo and his wanton or reckless disregard for the rights and safety of Berg was a proximate cause of the damages suffered by Berg. The jury found that the Boot was 45% responsible for Zummo's intoxication, Madigan's was 15% responsible, and Zummo was 40% responsible, and fixed punitive damages at $50,000.00. The trial court entered judgment in accordance with the verdict.
The Fourth Circuit reversed, finding as a matter of law that "merely serving alcohol to an underage person who becomes intoxicated and causes injury to others or to himself is not an `affirmative act' which can result in liability of the bar." Berg v. Zummo, 99-CA-0974 (La.App. 4 Cir. 5/10/00), 763 So.2d 57. In addition, the court of appeal reversed the punitive damages award, finding, as a matter of law, that the punitive damages statute does not allow the imposition of punitive damages against persons who have allegedly contributed to the driver's intoxication. Id. We granted Berg's writ to consider these two legal issues. Berg v. Zummo, 00-1699 (La.9/22/00), 767 So.2d 710.

DISCUSSION
This Court first addressed the imposition of liability on a seller of alcoholic beverages for damages in Lee v. Peerless Ins. Co., 248 La. 982, 183 So.2d 328 (1966). In that case, we held that a vendor was not liable for damages incurred by an intoxicated patron who was injured when he was hit by a car after being ejected from a nightclub next to a busy highway. This holding was based on the fact that Louisiana had never had a "dramshop"[1] law and that under our jurisprudence, "the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it." 183 So.2d at 330. Ten years later, in a factually similar case, this Court overruled Lee and held that a vendor could be liable for the breach of two duties: (1) the statutory duty imposed on retailers to refrain from serving alcoholic beverages to an intoxicated person under La. R.S. 26:88(2); and (2) the duty of the vendor under La. C.C. arts. 2315 and 2316 as a business invitor to conform their conduct to that of a reasonable man under like circumstances, which duty requires that they refrain from affirmative acts which increase the peril to the intoxicated person. Pence v. Ketchum, 326 So.2d 831, 835 (La.1976). Three years later, in another case where an intoxicated adult patron was injured when he was ejected from a bar, this Court overruled Pence in part, holding that:
There is, and should be, no absolute liability imposed upon an alcoholic beverage retailer for the consequences of a patron's intoxication. As this Court observed in Lee, Louisiana has never had a civil damage or "dramshop" statute. Regardless of whether the prohibition of R.S. 26:88(2) is purely and simply criminal *713 in nature or has attendant civil consequences the cause more proximate to an injury to an inebriated patron which results from his intoxication is the consumption of the alcohol and not the sale.
Thrasher v. Leggett, 373 So.2d 494, 496 (La.1979). However, this Court held that "Pence was correct in finding that Article 2315 imposes upon a bar owner a duty to avoid affirmative acts which increase the peril to an intoxicated person" and that "it is not inappropriate as in Pence to find that a proprietor who closes his establishment and puts an intoxicated patron out on a busy highway breaches his duty not to increase his patron's peril." Id. at 497. We held that "[u]nder Article 2315 the proper standard to determine whether a bar owner has breached his duty to an intoxicated patron is whether his conduct was that generally required of a reasonable man under like circumstances." Id. Applying the reasonable man standard under La. C.C. art. 2315, we concluded that "the defendant is not responsible for the ensuing harm to this patron caused, not by any affirmative act of defendant's, but simply by plaintiff's inebriated condition" because the defendant's bouncer had a right and duty to remove the disruptive plaintiff from the premises using reasonable force under the circumstances. Id.
In this Court's first case dealing with liability arising from the service of alcohol to a minor, we rejected the plaintiffs' contention that absolute liability should be imposed on a minor social host who serves intoxicating liquor to another minor. Gresham v. Davenport, 537 So.2d 1144, 1148 (La.1989) (applying pre-1986 law). We explained that this State has never implemented dramshop liability statutes against providers of alcoholic beverages and that instead, "we have chosen to apply the well accepted duty risk analysis to claims of injuries caused by effects of alcoholic beverages." Id.[2] Likewise, in St. Hill v. Tabor, we applied the duty-risk analysis to determine that an adult social host was negligent for serving alcohol to a minor who drowned during a large and raucous swimming party at her home, allowing the pool to become so cloudy that it was impossible to see to the bottom of the pool, and not having a life guard to supervise the swimmers. St. Hill v. Tabor, 542 So.2d 499 (La.1989). In these two social host cases involving the provision of alcohol to minors, this Court applied the basic duty-risk analysis, i.e., that the conduct of which the plaintiff complains must be a cause-in-fact of the harm, and that, after determining causation, the court must also determine what was the duty imposed on defendant, and whether the risk which caused the accident was within the scope of the duty. In these two cases involving minors, there was no requirement of an "affirmative act" on the part of the social host that increased the minor's risk of harm.
In 1986, the Louisiana Legislature enacted La. R.S. 9:2800.1, entitled "Limitation of Liability for loss connected with sale, serving, or furnishing of alcoholic beverages" which provides as follows:
A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by *714 an intoxicated person upon himself or upon another person.
B. Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana revised Statutes of 1950, nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served. (Emphasis added.)
La. R.S. 9:2800.1(A) places the responsibility for the consequences of intoxication on the intoxicated person by providing that it is the consumption of alcohol, rather than the sale, service or furnishing of alcohol, that is the proximate cause of any injury inflicted by an intoxicated person. In furtherance of La. R.S. 9:2800.1(A), subsection (B) provides immunity to vendors of alcoholic beverages who sell or serve alcohol to persons "over the age for the lawful purchase thereof."[3]
However, this immunity is only provided for damages resulting from the sale or service of alcohol to persons over the age for the lawful purchase of alcohol. Although La. R.S. 9:2800.1(A) has no specific language limiting its application to persons over the age for the lawful purchase of alcohol, it must be read in pari materia with La. R.S. 9:2800.1(B), which does have such language. La. R.S. 9:2800.1(B) would be superfluous if La. R.S. 9:2800.1(A) was meant to provide across the board immunity for damages resulting from the service of alcohol to minors and adults. La. R.S. 9:2800.1(C), which provides the same immunity for social hosts who provide alcohol to persons 21 years or older, would likewise be superfluous. If the legislature had intended that bar owners be absolutely immune from liability for the sale or service of alcoholic beverages to persons under 21 years of age who cause damage because of their intoxication, it would not have limited the immunity in La. R.S. 9:2800.1(B) to the sale or service of such beverages "to a person over the age for the lawful purchase thereof."
As every court of appeal that has considered this issue has recognized, when a bar serves alcohol to a minor and that minor causes damage to another because of his intoxication, La. R.S. 9:2800.1 does not immunize it from liability, nor is it absolutely liable; instead, the court must determine whether the vendor violated general negligence principles, applying the traditional duty/risk analysis. See Godfrey v. Boston Old Colony Ins. Co., supra; Hopkins v. Sovereign Fire & Cas. Ins. Co., 626 So.2d 880 (La.App. 3 Cir.1993), writ denied, 634 So.2d 390 (La.1994); Mills v. Harris, 615 So.2d 533 (La.App. 3 Cir.1993); Edson v. Walker, 573 So.2d 545 (La.App. 1 Cir. 1991), writ denied, 576 So.2d 34 (La.1991). However, the Fourth Circuit in Godfrey held that under the duty/risk analysis, the alcoholic beverage vendor's duty includes: (1) a duty to act as a reasonable person *715 under the circumstances of the case, and (2) a duty not to commit any affirmative acts which increase the peril caused by the intoxication. Godfrey, supra at 454. In Mills, the Third Circuit, as part of its duty/risk analysis, cited Thrasher for the legal proposition that "merely serving alcoholic drinks to an intoxicated person is not an affirmative act which would impose liability under LSA C.C. 2315." Mills, supra at 535. The courts in Edson and Hopkins mentioned no such "affirmative act" requirement.
In this case, the Fourth Circuit applied the standard set out by Godfrey, that "in cases in which a bar has sold alcohol to an underage person, and the underage person has then been involved in a tort as a result of intoxication, the application of general negligence principles and the duty/risk analysis required that, before the bar can be held liable, it must be proven that (1) the bar failed to exercise the care of a reasonable person under the circumstances and (2) the bar committed some `affirmative act' which `increased the peril' posed by the minor's intoxication." Op. at 5, 763 So.2d at 59-60. Then, relying on the holding in Mills, the court of appeal held that "[m]erely serving alcohol to an underage person who becomes intoxicated and causes injury to other or to himself is not an `affirmative act' which can result in liability to the bar." Id. The court equated an "affirmative act" with ejectment from the premises and found that because Zummo "simply left The Boot in an ordinary way," there was a complete absence of any basis to impose liability on The Boot.
The "affirmative act" requirement, specifically unreasonable ejectment from the premises, was put into place by this Court in Thrasher, as a requirement to impose liability on an alcoholic beverage vendor who serves alcohol to an intoxicated adult. However, the difference between selling and serving alcohol to an adult and a minor is tremendous. Legislation has been enacted specifically pertaining to the sale of alcohol to minors,[4] and although those statutes impose criminal, rather than civil, responsibility, they serve as guidelines for the determination of an alcoholic beverage vendor's duty to refrain from selling or serving alcohol to minors. It further evidences the public policy of this state to prohibit the sale of alcohol to minors and to protect minors and the general public from the effects of a minor's intoxication, particularly when the minor is operating an automobile. The court of appeal's holding that serving alcohol to a minor is not an affirmative act which can result in liability would allow alcoholic beverage vendors throughout the state to sell and serve alcohol to minors in violation of state law without fear of civil liability and, thus, we reject that holding.
As we stated in Gresham, a suit involving a minor social host providing alcohol to another minor, this Court has "chosen to apply the well accepted duty risk analysis to claims of injuries caused by the effects of alcoholic beverages." Thus the under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's *716 injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991) (on rehearing).
First, it must be determined what duty was imposed on The Boot and whether The Boot breached that duty. We find that a vendor of alcoholic beverages has a duty to refrain from selling or serving alcohol to minors. Moreover, it is illegal. The Boot clearly breached that duty by serving alcohol to Zummo, a seventeen year old. The jury heard testimony from Zummo that his identification was not checked when he entered The Boot or when he purchased the pitcher of beer.
Next, it must be determined if the conduct of which the plaintiff complains is a cause-in-fact of the harm. "Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm." Gresham, supra at 1147. The jury in this case heard four days of testimony and answered a special jury interrogatory finding that the actions of The Boot in serving alcoholic beverages to Zummo was a cause in fact, although it might not have been the only cause in fact, of the damages suffered by Berg (the jury assessed 60% of the fault to others). The jury heard testimony from Berg that as he approached Zummo and his four friends that they appeared intoxicated and they attacked him for no apparent reason, and then Zummo ran over him in his truck in his attempt to quickly leave the scene, going the wrong way down a wrong way street. Further, the jury heard the testimony of Jill McCoy who witnessed Zummo and his friends beating up Berg, one friend throwing a drink on Berg from the back of the truck, and then Zummo's truck screeching out of its parking spot, striking Berg, fishtailing, and then speeding the wrong way down a one-way street. It also heard Zummo testify that he drank as much as a half a pitcher of beer at The Boot. The jury clearly believed Berg's evidence, and not the testimony of Zummo and his friends who testified they were not intoxicated and that the beer they drank at The Boot played no part in their conduct. We cannot say that the jury finding was manifestly erroneous.
Next, it must be determined whether the risk that caused the accident was within the scope of the duty. We find that the risk that a minor who is served alcohol might become intoxicated and get into a fight and injure someone with his car is clearly within the scope of the duty of The Boot not to serve alcohol to a minor. Finally, actual damages were proven.
Thus, we find that the jury's finding that The Boot was liable for general damages to Berg for its negligence in serving alcohol to Zummo was not manifestly erroneous and we reinstate the jury verdict in this regard.
We also granted this writ to determine whether the court of appeal erred in overturning the jury's verdict assessing a percentage of punitive damages against The Boot under La. C.C. art. 2315.4.[5] La. C.C. art. 2315.4 provides:

*717 In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
The court of appeal held that the punitive damages statute does not allow the imposition of punitive damages against persons who have allegedly contributed to the driver's intoxication. Op. at 6, 763 So.2d at 60. This issue is res nova before this Court although courts of appeal have considered whether punitive damages can be awarded against a party other than the intoxicated driver of the motor vehicle.
The Fourth Circuit Court of Appeal has held on two occasions that an intoxicated driver's employer, when held vicariously liable for damages caused by the driver, may be cast for exemplary damages under article 2315.4. Lacoste v. Crochet, 99-0602 (La.App. 4 Cir. 1/5/00), 751 So.2d 998; Curtis v. Rome, XX-XXXX-XX-XXXX (La. App. 4 Cir. 5/5/99), 735 So.2d 822. However, in a case involving vendors of alcoholic beverages, the Third Circuit has held that La. C.C. Art. 2315.4 limits those against whom punitive damages can be assessed to the intoxicated driver of the vehicle. Bourque v. Bailey, 93-1657 (La.App. 3 Cir. 9/21/94), 643 So.2d 236, writ denied, 94-2619 (La.12/16/94), 648 So.2d 392. In holding that punitive damages could not be assessed against the store which sold alcohol to a minor who then provided it to another minor who caused an automobile accident, nor a bar which sold alcohol to an unnamed third party of legal age who then provided it the minor driver, the court relied in part on the legislative history of La. C.C. art. 2315.4. Id. at 239.
We have examined the legislative history of La. C.C. art. 2315.4, which was enacted by Acts 1984, No. 511, Section 1, and originated as House Bill 1051. The Minutes from the House Committee on Civil Law and Procedure clearly indicate that the bill was "targeted" at intoxicated drivers and was intended "to punish the intoxicated defendant ... [to] punish him financially the way he should be punished by paying additional damages." Minutes from the House Committee on Civil Law and Procedure, June 4, 1984. Although there was some discussion about insurance coverage for such damages, there was no discussion that the bill would penalize anyone but the intoxicated driver.
We find that the legislative history reflects the legislature's intent to penalize only the intoxicated driver of motor vehicle and is in line with the narrow construction *718 that this Court gives to penal statutes.[6] Thus, we affirm the court of appeal's holding that La. C.C. art. 2315.4 does not allow the imposition of punitive damages against persons who have allegedly contributed to the driver's intoxication.

CONCLUSION
The liability of a vender of alcoholic beverages who sells or serves alcohol to a person under the legal drinking age is determined under La. C.C. arts. 2315 and 2316 using the traditional duty/risk analysis on a case by case basis. Under this analysis, the vendor has the duty to refrain from selling or serving alcohol to a minor, and if the other requirements of breach of duty, causation and damages are proven, the vendor will be liable for damages. It is not necessary that the vendor commit an additional "affirmative act," such as ejecting the minor patron from the premises, that increases the peril of the intoxicated patron, in order for liability to be imposed.
However, under the punitive damages statute, La. C.C. art. 2315.4, punitive damages cannot be assessed against a vendor of alcoholic beverages for selling or serving alcohol to an intoxicated person whose intoxication while operating a motor vehicle causes injury.

DECREE
For the reasons stated above, that portion of the judgment of the court of appeal which reversed the judgment of the trial court awarding plaintiff general damages against The Boot is reversed and the trial court's judgment is reinstated; that portion of the judgment of the court of appeal which reversed the judgment of the trial court assessing punitive damages against The Boot is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
CALOGERO, C.J., dissented and assigned reasons.
JAMES C. GULOTTA, J. pro tem., and JOHNSON, J., dissented.
CALOGERO, Chief Justice, dissents and assigns reasons.
I respectfully disagree with the majority's conclusion that the bar owner in this case is liable under Louisiana's duty/risk analysis. As the majority notes, to prevail in his action under La.Civ.Code arts. 2315 or 2316 the plaintiff must prove five separate elements, one of which is that the defendant's substandard conduct was a legal or proximate cause of the plaintiff's injuries. Ante, p. 716 (citing Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991)(on rehearing)). However, the legislature has specifically declared in La.Rev.Stat. 9:2800.1(A) that the sale, serving, or furnishing of alcohol is not conduct that may be deemed the proximate cause of any injury inflicted by the intoxicated person; rather, it is "the consumption of intoxicating beverages" that is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person. La.Rev. Stat. 9:2800.1(A) (emphasis supplied).
Furthermore, contrary to the majority's reasoning at pages 713-14, ante, La.Rev. Stat. 9:2800.1(A) is not restricted to persons of the age for the lawful purchase of intoxicating beverages simply because the legislature in La.Rev.Stat. 9:2800.1(B) appears to grant immunity from liability for damages occurring off-premises to certain permitted vendors who sell or serve intoxicating *719 beverages to persons of the age for lawful purchase. It is illogical to conclude that under La.Rev.Stat. 9:2800.1(A) the sale or service of alcoholic beverages to a person of the age for lawful purchase cannot be the proximate cause for any injury he inflicts, but that the sale or service of alcoholic beverages to a person under the age for lawful purchase can be the proximate cause of any injury she inflicts. The majority's error is in assuming for purposes of analysis that La.Rev.Stat. 9:2800.1(A) grants across the board immunity from liability when it does not. La. Rev.Stat. 9:2800.1(A) is clearly directed to the acts of selling, serving, or furnishing of intoxicating beverages. Thus, the mere selling, serving, or furnishing of alcoholic beverages to a person under the age for lawful purchase, or any age for that matter, cannot result in liability under the duty/risk analysis because those acts cannot be deemed the legal or proximate cause of the damages, as the legislature has declared.
However, the legislature has left open whether other acts or omissions by the person selling, serving, or furnishing the alcoholic beverages to a person of any age could result in liability under the duty/risk analysis, except to the extent that it granted immunity from liability in certain cases to certain persons in La.Rev.Stat. 9:2800.1(B) (permitted vendors) and La. Rev.Stat. 9:2800.1(C) (social hosts). Thus, there is no need to import into La.Rev. Stat. 9:2800.1(A) the restrictions set forth in La.Rev.Stat. 9:2800.1(B) and La.Rev. Stat. 9:2800.1(C).
I would hold that, applying La.Rev.Stat. 9:2800.1(A) under our duty/risk analysis, the sale, serving, or furnishing of alcoholic beverages to a person under the age for lawful purchase, without any other act or omission on the part of the person selling, serving, or furnishing the alcoholic beverages that could be the legal cause of any injury inflicted by the intoxicated person, is not sufficient to impose liability on the person selling, serving, or furnishing the alcoholic beverage. Here, the plaintiff has not alleged that any other act of The Boot or breach of any other duty, other than selling Zummo a pitcher of beer, caused his damages. Consequently, I would affirm the appellate court's holding that The Boot is not liable for general damages under La.Civ.Code arts. 2315 or 2316.
NOTES
[*] James C. Gulotta, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[1] The term "dram shop" is derived from the fact that commercial establishments typically sold liquor by the dram, a unit of measurement less than a gallon, in the 1800's when "Dram Shop" Acts were first introduced in this country. Godfrey v. Boston Old Colony Ins. Co., 97-2568 (La.App. 4 Cir. 5/27/98), 718 So.2d 441, n. 2, writ denied, 98-2487 (La.11/20/98, 729 So.2d 563). In those states which have enacted "Dram Shop" Acts, strict liability, irrespective of negligence, is imposed upon the seller of intoxicating liquors because of the purchaser's intoxication. Prosser, Law of Torts, § 81.
[2] In Gresham, we found that although the alcohol provided by the minor social host was a cause-in-fact of the minor's automobile accident, the minor social host had no duty not to provide alcohol to another minor, and, even if she did have such a duty, the risk that the minor she served, who was a passenger in the vehicle, would grab the steering wheel and cause an accident did not fall within the scope of the duty.
[3] This Court has never addressed, nor do we address today, whether the bar owner can be liable in spite of La. R.S. 9:2800.1 for taking an affirmative act which increases the peril to an intoxicated adult patron under the pre-La. R.S. 9:2800.1 reasoning of Thrasher v. Leggett. In Mayo v. Hyatt Corp., 898 F.2d 47 (5th Cir.1990), the United States Fifth Circuit Court of Appeal held that under La. R.S. 9:2800.1, "the sole duty of a seller of alcoholic beverages is to avoid taking `affirmative acts which increase the peril to an intoxicated person.'" 898 F.2d at 49 (citing Thrasher v. Leggett, supra).
[4] In 1994, La. R.S. 14:91 applied, making it illegal to sell alcohol to anyone under the age of 18. Today, La. R.S. 14:93.11 makes the sale or delivery of alcohol to a person under the age of 21 illegal. Likewise, La. R.S. 14:93.12 makes the purchase or possession of alcohol by anyone under the age of 21 illegal.
[5] Plaintiff argues that The Boot is precluded from raising the issue of whether the jury improperly assessed punitive damages against it on appeal because it did not object to the jury instructions or special jury interrogatories regarding the imposition of punitive damages. Plaintiff relies on La. C.C.P. art. 1793(C) which provides that "a party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection." However, La. C.C.P. art. 1793(B) requires that the trial court give accurate and necessary jury instructions based upon the facts and evidence of the case. Accordingly, courts have held that where the jury instructions or interrogatories contain a "plain and fundamental" error, the contemporaneous objection requirement is relaxed and appellate review is not prohibited. Trans-Global Alloy Limited v. First National Bank of Jefferson Parish, 583 So.2d 443, 448 (La.1991) (noting that the jury interrogatories in that case did not "contain the kind of plain, fundamental error which might tempt us not to heed the language of Article 1793"); Kose v. Cablevision of Shreveport, 32-855 (La.App. 2 Cir. 4/5/00), 755 So.2d 1039, writ denied, 00-1177 (La.6/16/00), 764 So.2d 964; Jones v. Peyton Place, 95-0574 (La.App. 4 Cir. 5/22/96), 675 So.2d 754; Gilbert v. Laborde, 93-761 (La.App. 3 Cir. 2/2/94), 632 So.2d 1162, writ denied, 94-0896 (La.5/20/94), 637 So.2d 480. We find that the jury instructions and interrogatories regarding the assessment of punitive damages against The Boot misstated the law and thus contained a "plain and fundamental" error which leads us to relax the contemporaneous objection requirement.
[6] We express no view on whether punitive damages can be imposed against a party who is vicariously liable for general damages resulting from the conduct of an intoxicated person, such as an employer.