PEATROSS, J.
| ^Plaintiffs, Ollie Wimberly, Jr. and Sheila Wimberly, appeal a judgment in favor of Defendants, Joseph and Cheryl Giglio, the owners of the nightclub Central Station in Shreveport, Louisiana. For the reasons stated herein, we affirm.

FACTS

On April 26, 2006, two freshmen at Louisiana Tech University, Ollie Wimberly, 18, and his friend, Robert Cheatham, 19, traveled to Shreveport from Ruston for a night of partying. They attended the Pink Party at the Municipal Auditorium and, later in the evening, went to Central Station, a local nightclub owned by Defendants Joseph and Cheryl Giglio. It is undisputed that Wimberly and Cheatham were drinking alcoholic beverages prior to arriving at Central Station and the young men used fake I.D.s to get in the nightclub. Cheat-ham testified that he did not drink any alcoholic | ¡¡beverages while at Central Station. After midnight, the two left Central Station. with Cheatham driving because Wimberly was too intoxicated to drive.
At 1:50 a.m., the car driven by Cheat-ham left eastbound 1-20 at a five-degree angle and hit a tree. The car broke in half and the right side of the front half of the vehicle was sheared off. Wimberly was ejected and suffered massive internal injuries, two broken legs, lacerations and head injuries which resulted in his death. Cheatham, however, survived.
Ollie Wimberly, Jr. and Sheila Wimberly, parents of the deceased Wimberly, filed suit against the Giglios and their insurers alleging that the Giglios were liable for Wimberly’s death because the employees of the bar served drinks to the underage Cheatham and allowed him to leave in a visibly intoxicated state. Cheatham was *392 also a named Defendant. Plaintiffs hired attorney Kenota Pulliam to represent them, but she subsequently encountered issues with the disciplinary board of the Louisiana Bar Association prior to trial of the matter. As a result, Ms. Pulliam was unable to continue representation of Plaintiffs. .Attorney Alex Washington then enrolled for Ms. Pulliam and requested a continuance to prepare for trial, which was granted. On the day before trial, Mr. Washington filed another Motion to Continue, arguing that he had not been successful in obtaining the 14video surveillance tape from Central Station which was recorded on the night of the accident. The trial judge denied the motion for continuance, recognizing that the matter had been pending for more than three years and that he had previously advised both parties that no further continuances would be granted.
As stated, the matter proceeded to trial and the court ruled in favor of the Defendants. In his ruling, the trial judge emphasized that his conclusion was based on a credibility determination and that he credited the testimony of Cheatham that he was not served any alcoholic beverages while he and Wimberly were at Central Station on the night of the accident. The trial judge concluded, therefore, that Plaintiffs had failed to prove by a preponderance of the evidence that the employees of Cental Station breached any duty owed to Cheatham. Plaintiffs now appeal, arguing that the trial judge erred in denying the March 25 Motion to Continue, in finding no liability on. the part of Central Station (and, thus, the Giglios) and in refusing to admit the coroner’s report into evidence.
DISCUSSION

Motion for Continuance

This case was continued numerous times over the course of the three years since suit was filed in 2006. On February 9, 2010, shortly after |fienrolling as counsel for Plaintiffs, Mr. Washington filed a Motion to Continue seeking additional time in which to prepare for the trial following his enrollment. The motion was granted and trial was ultimately set for March 25, 2010. At 9:30 a.m. on that date, Mr. Washington filed a second Motion to Continue. The basis for the motion was Mr. Washington’s alleged inability to obtain discovery from Cental Station of the video surveillance tape recorded on the night of the accident. The trial judge delayed the start of trial until 1:30 p.m. that day. In their first assignment of error on appeal, Plaintiffs rely on La. C.C.P. art. 1602 and assert that the trial judge erred in denying the Motion to Continue filed on March 25, 2010, because the videotape is material evidence which Plaintiffs exercised due diligence in attempting to obtain. We disagree.
A continuance is mandatory under article 1602 if the party seeking the continuance shows that a subpoena issued, the evidence is material and the plaintiff has exercised due diligence in attempting to obtain discovery of the evidence. La. C.C.P. art. 1602. Counsel for Defendants advised Mr. Washington that the videotape was taken into custody by the state police and this was corroborated by the testimony of the Giglios. A subpoena duces te-cum was issued to the state police on March 5, 2010, directing the police to | produce the videotape. The state police, however, showed no record of the videotape ever being seized and taken into custody.
Discovery in the case began in September 2007; however, depositions of the parties by Plaintiffs were not taken until February and March 2010. The record reflects that all parties, including the *393 court, made efforts to obtain the videotape. Further, as the trial judge emphasized, the case had been pending for three years at the time of the denial of the motion to continue. Plaintiffs had previously requested and been granted several continuances and the trial judge had warned the parties that no further continuances would be granted. Based on this record, we cannot conclude that the trial judge was manifestly erroneous in determining that Plaintiffs failed to exercise due diligence in locating and procuring the videotape.
Assuming that Plaintiffs did exercise due diligence, we further find that Plaintiffs have failed to prove the materiality of the evidence. Significantly, the testimony reveals that an investigating officer reviewed the videotape at Central Station and testified that he did not see Wimberly or Cheatham on the tape. There is testimony that there may have been some difficulty in physically collecting the videotaped evidence from the surveillance system at the nightclub and the officer made the determination that it was not necessary because the two men were not seen on the tape. We |7agree, therefore, that there was nothing damaging to Central Station on the tape. In light of the testimony of the officers, we conclude that the trial judge did not abuse his wide discretion in refusing to grant a continuance to allow Plaintiffs to search further for the videotape.

Negligence

Factual findings may not be set aside on appeal unless such findings are manifestly erroneous or clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). To reverse the findings of the trier of fact, an appellate court must view the record in its entirety and find that the record establishes that no reasonable factual basis exists for the factual findings and that such findings are manifestly erroneous or clearly wrong. Id. The issue to be resolved is not whether the trier of fact was right or wrong, but whether its conclusion was reasonable. Id. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
Here, Plaintiffs argue that the trial judge erred in finding that Defendants were not liable for causing the death of Wimberly. They note that La. R.S. 9:2800.1, the social host liability statute, does not immunize a bar owner from liability. That statute provides:
A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the [Rsale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
B. 'Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950[FN1], nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.
C. (1) Notwithstanding any other law to the contrary, no social host who serves or furnishes any intoxicating beverage of either high or low alcoholic content to a person over the age for the *394 lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were served or furnished.
(2) No social host who owns, leases, or otherwise lawfully occupies premises on which, in his absence and without his consent, intoxicating beverages of either high or low alcoholic content are consumed by a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person who consumed the intoxicating beverages.
|nD. The insurer of the intoxicated person shall be primarily liable with respect to injuries suffered by third persons. E. The limitation of liability provided .by this Section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol.
Immunity from liability under section B is limited to those bar owners who serve or sell alcoholic beverages to “... person[s] over the age for the lawful purchase thereof[.]” Thus, when a bar employee serves alcohol to a person under the age of 21 and that person causes damage because of his intoxication, La. R.S. 9:2800.1 does not immunize the bar owner from liability; however, neither is that bar owner absolutely liable. Colgate v. Mughal Bros., Inc., 36,754 (La.App.2d Cir.1/29/03), 836 So.2d 1229, writ denied, 03-0923 (La.5/16/03), 843 So.2d 1136, citing Berg v. Zummo, 00-1699 (La.4/25/01), 786 So.2d 708.
In determining whether liability exists, the court must determine whether the bar owner violated general negligence principles, applying the traditional duty/ risk analysis. Colgate, supra. The following five separate elements must be proved: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty 110element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). Id. A negative answer to any of the elements of the duty/risk analysis prompts a no-liability determination. Id.; Stroik v. Ponseti, 96-2897 (La.9/9/97), 699 So.2d 1072.
The burden of proving negligence by a preponderance of the evidence rests on the party alleging it. Aetna Life and Cas. Co. v. Solloway, 25,462 (La.App.2d Cir.1/19/94), 630 So.2d 1353, writ denied, 94-0575 (La.4/22/94), 637 So.2d 162. The plaintiff bears the burden of proving his case by a preponderance of the evidence. Id. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance of the evidence when, taken as a whole, such proof shows that the fact sought to be proved is more probable than not. Aetna Life and Cas. Co., supra, citing Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972).
In the case sub judice, Plaintiffs assert that Central Station violated general negligence principles, citing the following (verbatim):
*395 1. Alphonso Rodriguez [a friend of Wimberly’s who was present at Central Station that night] testified that the two men [Wimberly and Cheatham] entered Central Station with fake I.D.s and he observed Cheatham holding a shot Inglass. Later, he observed Cheatham holding a different glass.
2. Paula Crosby testified that she saw the two men at Dairy Queen after they had left Central Station and that Cheat-ham told her they had been drinking (and doing shots) at Central Station.
3. Trooper Mondello testified that Cheatham told him he had had a couple of beers prior to the accident.
4. Trooper Robinson testified that there was a strong odor of alcohol on Cheatham and no empty bottles at the scene of the accident.
5. Cheatham was convicted of vehicular homicide in the death of Wimberly and admitted he was intoxicated on the night of the accident.
Our review of the record, however, considering the specific facts of this case and applying the elements of the duty/risk analysis, reveals no manifest error in the trial judge’s conclusion that Plaintiffs failed to prove by a preponderance of the evidence that the employees of Central Station acted negligently.
A vendor of alcoholic beverages has a duty to refrain from selling or serving alcohol to minors. Colgate, supra; Berg, supra. In Berg, the supreme court recognized that “the difference between selling and serving alcohol to an adult and a minor is tremendous” and opined that selling alcohol to 112minors constitutes an affirmative act which may result in liability. The supreme court concluded as follows:
[T]he liability of a vender [sic] of alcoholic beverages who sells or serves alcohol to a person under the legal drinking age is determined under La. C.C. arts. 2315 and 2316 using the traditional duty/ risk analysis on a case by case basis. Under this analysis, the vendor has the .duty to refrain from selling or serving alcohol to a minor, and if the other requirements of breach of duty, causation and damages are proven, the vendor will be liable for damages. It is not necessary that the vendor commit an additional “affirmative act,” such as ejecting the minor patron from the premises, that increases the peril of the intoxicated patron, in order for liability to be imposed.
Thus, we recognize the duty imposed on Central Station not to sell or serve alcohol to patrons under age 21, such as Wimberly and Cheatham. Once the duty is established, it is then incumbent upon the plaintiff to prove by a preponderance of the evidence that this duty was breached by the vendor. Here, Plaintiffs failed to prove by a preponderance of the evidence that Central Station served alcohol to Cheatham.
Rodriguez testified that he had been friends with Wimberly for approximately one year prior to the night of the accident and had once been in a romantic relationship with him for four months. The two were no longer involved at the time of the accident. Rodriguez testified that he saw Wimberly at the Pink Party and rode with him to Central Station. According to Rodriguez, Wimberly used a fake I.D. to get in the club, but did not |ispurchase alcohol once inside. He further testified that he did not know Cheatham prior to being introduced to him by Wimberly at Central Station. Rodriguez testified that he saw Cheatham holding an empty shot glass and, later, a different glass. Initially, Rodriguez testified that he only observed empty shot glasses in Cheatham’s hand; however, later, when questioned by the court, Rodriguez testified that he saw *396 Cheatham drinking alcohol at Central Station.
Cheatham also testified at trial. He consistently stated that he and Wimberly had been drinking at the Pink Party prior to arriving at Central Station. Cheatham explained that the two did not ride together to Central Station and that, when he arrived, Wimberly was talking with Rodriguez on the patio area of the club. He helped Wimberly to the car to leave because Wimberly was too intoxicated to walk to the vehicle. Cheatham agreed that he was also intoxicated, but stated that he did not purchase or consume any additional alcohol at Central Station.
The trial judge credited the testimony of Cheatham over that of Rodriguez. Our review of the testimony reveals no abuse of discretion in the trial judge’s credibility determination. There is only speculation and conjecture that Cheatham purchased alcohol at Central Station and consumed it. This alone does not satisfy the breach of any duty on the part of | uthe club. See Crutchfield v. Landry, 03-0969 (La.App. 4th Cir.3/17/04) 870 So.2d 371, writ denied, 04-1295 (La.9/24/04), 882 So.2d 1128.

Coroner’s report

In their third assignment of error, Plaintiffs argue that the trial court erred in refusing to allow the introduction of the coroner’s report into evidence. Plaintiffs’ pretrial exhibit list failed to list the coroner’s report as a potential exhibit to be introduced at trial. The trial judge, therefore, refused to allow the report as a “last minute addition” so that each party would be “adequately prepared.” Plaintiffs argue that Defendants listed the district attorney’s file as an exhibit which contains the coroner’s report and it would have been no surprise to Defendants to allow its admission. Defendants counter that it was within the judge’s discretion to disallow it since it was not listed by Plaintiffs as an exhibit.
Complaint of an alleged erroneous evi-dentiary ruling “may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.” La. C.E. art. 103 (emphasis added). The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of that discretion. Graves v. Riverwood Intern. Corp., 41,810 (La.App.2d Cir.1/31/07), 949 So.2d 576, writ denied, 07-0630 (La.5/4/07), 956 So.2d 621.
11fiOn appeal, the court must consider whether the complained-of ruling was erroneous and whether the error affected a substantial right of the party affected. If not, a reversal is not warranted. Graves, supra, citing La. C.E. art. 103(A). The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case, and it is the complainant’s burden to so prove. Graves, supra.
We find that any error in refusing to allow the introduction of the coroner’s report into evidence is harmless as it did not have any substantial effect on the outcome of the case. The record clearly establishes how the accident occurred, the cause of death and that Wimberly was intoxicated. Introduction of the coroner’s report would not have affected the outcome of the proceedings in any way.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Defendants Joseph and Cheryl Giglio is affirmed. Costs of appeal are assessed to Plaintiffs Ollie Wimberly, Jr. and Sheila Wimberly.
AFFIRMED.