836 So.2d 1229 (2003)
Rita COLGATE, Plaintiff-Appellant,
v.
MUGHAL BROTHERS, INC., d/b/a The Extremes Nightclub, Defendant-Appellant.
No. 36,754-CA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
Rehearing Denied February 27, 2003.
*1230 Stephen A. Jefferson, Monroe, for Defendant-Appellant, Nusrat A. Mughal.
Jack Wright, Jr., Monroe, for Plaintiff-Appellant, Rita Colgate.
Before GASKINS, CARAWAY and KOSTELKA, JJ.
KOSTELKA, J.
In this wrongful death lawsuit, we are presented with two separate appeals from the judgment of the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana. First, Nusrat Mughal ("Mughal") appeals a judgment in favor of Rita Colgate ("Colgate"), the mother of Brandi Spradlin, who died in a one-vehicle accident in March, 1998. Second, Colgate appeals the same judgment, arguing that the money damages in her favor were insufficient.[1] For the following reasons, *1231 the judgment of the trial court is reversed and the appeal by Colgate dismissed.

FACTS
Brandi Spradlin ("Spradlin") was twenty years old on the date of her death. Although Spradlin's whereabouts for the entire evening preceding her death are not completely known, she did spend time at The Extremes nightclub,[2] where she allegedly drank alcoholic beverages. Spradlin also visited other nightclubs, where, again, she may or may not have consumed alcoholic beverages. At approximately 2:00 a.m., Spradlin left The Extremes. Several hours later, she lost control of her vehicle. The resultant collision left her with massive injuries which caused her death. Blood tests revealed that Spradlin had a blood alcohol concentration in excess of the presumptive limit for legal intoxication.
Colgate filed suit against Mughal Brothers, Inc. d/b/a The Extremes Nightclub, generally claiming it was negligent in failing to prevent the sale of alcohol to Spradlin or in failing to prevent others from furnishing Spradlin alcohol. A supplemental petition was later filed by Colgate naming Mughal, individually, as defendant (he was former president and sole shareholder of Mughal Brothers, Inc.), claiming that the corporation had been dissolved by affidavit on December 14, 1999. When Mughal failed to answer the amended petition filed against him, Colgate attempted to obtain a default judgment against him; however, the trial court, upon hearing evidence of Colgate's claims, determined that insufficient evidence existed to find Mughal liable by a default judgment.
In January, 2002, a trial was held in the matter. Raymond Sandage ("Sandage") was the only witness to testify that he saw Spradlin at The Extremes the evening before her death. According to Sandage, he arrived with a friend, Chris Boyd ("Boyd") at The Extremes between 12:30 a.m. and 1:00 a.m., after having been to another nightclub. He admitted during cross-examination that he consumed twelve beers prior to his arrival at The Extremes and drank at least one more beer while there. Sandage stated he had never seen Spradlin before that night, but that Boyd pointed her out to him. At that time, Sandage testified, Spradlin was at the main bar, and he witnessed her take two glasses or plastic cups of a beverage he assumed to be beer from the counter. He did not see Spradlin pay for the drinks, nor did he see a bartender hand her the drinkshe only saw her remove the two cups from the counter. According to Sandage, Spradlin drank only one beer and then danced with Boyd until the bar closed at approximately 2:00 a.m. At that time, Spradlin, Sandage and Boyd left together in Spradlin's car, which she drove, along with another unnamed male passenger. After an unsuccessful attempt to purchase alcohol at a convenience store, Spradlin dropped off the unnamed passenger, and then Spradlin drove to the Western Club, an after-hours nightclub where patrons brought their own liquor. Sandage saw Spradlin sporadically while they were at the Western Clubshe was dancing with Boyd while Sandage played pool. Sandage left the Western Club at approximately 4:00 a.m., but Spradlin remained at the club.
The only other testimony at trial bearing on Spradlin's consumption of alcohol the night of her death was that of Drury Bynum ("Bynum"), a pharmacist who was qualified, over objection, as an expert in the field of pharmacology, specifically in the area of absorption and degradation of *1232 alcohol in the human body. It was Bynum's opinion, based on Spradlin's blood alcohol level at the time of her death, that the beer consumed by Spradlin at The Extremes was a contributing factor to the motor vehicle accident causing her death.
There were also several witnesses who testified as to the procedures in place at The Extremes to ensure that underaged patrons were not sold or served alcohol. Gerald Hamms ("Hamms"), a Winn Parish deputy sheriff, worked at The Extremes as a security guard. His main duty was to stand by the bar to ensure that the bartenders did not sell or serve alcohol to underaged patrons. George Talton ("Talton") was the general manager of the club. He testified that those patrons twenty-one and over were given a bracelet to wear in order to indicate to the bartenders they were of the legal drinking age and able to purchase alcohol. Talton stated that the bartenders were under strict orders not to sell or serve alcohol to patrons without bracelets under threat of losing their jobs. Finally, Tanveer Mughal, Mughal's brother, testified and explained how he assisted his brother in opening The Extremes and that he and Talton had devised the bracelet system so the bartenders could differentiate legal-aged patrons from those underaged.
Upon the conclusion of trial, the trial court immediately rendered its judgment, giving oral reasons for judgment at that time. The trial court noted:
Now, I realize this is not a perfect[ly] proven case. But, we determined that she was at the Extremes. There's an hour, at least maybe two hours at the beginning that we don't know where she was. After 2:00 o'clock, which is the closing of the Extremes she obviously went by witnesses' testimony to the West Monroe Western Club and maybe even somewhere else after the last witness had any contact with her. The best I can come up with is maybe split the time of 9:00 to 5:00. Four hours at the Extremes, four hours somewhere else. We don't know, it wasn't shown that she didn't have or did have any drinks anywhere else. But, we know that she had some drinking at the Extremes and she was in some.. to some degree tipsy or unbalanced or not totally there....
The trial court valued the award at $300,000, but then divided that amount in half, based on its assumption that Spradlin possibly had spent half of her time at another nightclub. The trial court further attributed Spradlin's comparative fault at 50 percent, and made a final award to Colgate of $75,000. These appeals ensued.

DISCUSSION
On appeal, Mughal argues that the trial court erred in its determination that Mughal was negligent because employees of The Extremes served Spradlin alcohol which contributed to the cause of her death. For the following reasons, we agree.
In Berg v. Zummo, XXXX-XXXX (La.04/25/01), 786 So.2d 708, the Louisiana Supreme Court addressed the precise issue of a bar owner's liability arising from the sale or service of alcohol to persons under twenty-one years of age.[3] In Berg, *1233 the court concluded that the liability of a vendor of alcoholic beverages who sells or serves alcohol to a person under the legal drinking age is determined under La. C.C. arts. 2315 and 2316, using the traditional duty/risk analysis on a case-by-case basis.
Louisiana R.S. 9:2800.1 limits the liability of those who sell or serve alcoholic beverages; however, the statute only provides immunity to those bar owners who serve or sell alcoholic beverages to "... [persons] over the age for the lawful purchase thereof, ..." La. R.S. 9:2800.1(B). Thus, when a bar serves alcohol to a person under the age of twenty-one, and that person causes damage because of his intoxication, La. R.S. 9:2800.1 does not immunize the bar owner from liability; however, neither is that bar owner absolutely liable. Berg, 786 So.2d at 714.
In determining whether liability exists, the court must determine whether the bar owner violated general negligence principles, applying the traditional duty/ risk analysis. Id. In Berg, the court determined that the following five separate elements must be proved: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). Id. at 715-16, citing, Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991). A negative answer to any of the elements of the duty/risk analysis prompts a no-liability determination. Stroik v. Ponseti, 96-2897 (La.09/09/97), 699 So.2d 1072, 1077.
The burden of proving negligence by a preponderance of the evidence rests on the party alleging it. Aetna Life and Cas. Co. v. Solloway, 25,462 (La. App.2d Cir.01/19/94), 630 So.2d 1353, writ denied, 94-0575 (La.04/22/94), 637 So.2d 162. The plaintiff bears the burden of proving his case by a preponderance of the evidence. Id. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance of the evidence when, taken as a whole, such proof shows that the fact sought to be proved is more probable than not. Aetna Life and Cas. Co., supra, citing, Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621, 627 (1972). Here, in considering the facts of this case and applying the elements of the duty/risk analysis, we determine that Colgate failed to prove by a preponderance of the evidence that Mughal acted negligently.
The Louisiana Supreme Court determined that a vendor of alcoholic beverages has a duty to refrain from selling or serving alcohol to minors, noting that such activity is illegal. Berg, 786 So.2d at 716. Thus, we recognize the duty imposed on Mughal not to sell or serve alcohol to patrons under age twenty-one, such as Spradlin.
Once the duty is established, it is then incumbent upon the plaintiff to prove by a preponderance of the evidence that the stated duty was breached by the vendor. Whereas, in Berg, there was direct evidence that a minor had purchased alcohol at the bar in question, proving the breach, the evidence in this case does not so obviously *1234 lead to the conclusion that Mughal breached his duty to Spradlin.
In this case, the only evidence bearing on the issue of whether Spradlin was sold or served alcohol by employees at The Extremes is entirely speculative. Probabilities, surmises, speculations, and conjectures are insufficient to prove negligence by a preponderance of the evidence. Cangiano v. Forte Hotels, Inc., 2000-40 (La.App. 5th Cir.10/31/00), 772 So.2d 879, 881, writ denied, XXXX-XXXX (La.01/26/01), 782 So.2d 636; Leger v. Citron Ford, Inc., 589 So.2d 23 (La.App. 1st Cir.1991).
The only evidence before the trial court bearing directly on this issue was through the testimony of Sandage. He testified he observed Spradlin take two glasses of beer from the main bar counter but that he saw no money exchange hands. Neither did he state that a bartender had handed Spradlin, i.e., "served," the drinks. This evidence on the critical issue of whether Spradlin was sold or served alcohol by The Extremes is inadequate to conclude that Mughal breached his duty to Spradlin, because it requires further speculation by the fact finder as to how Spradlin obtained the drinks Sandage described. Given only Sandage's testimony, the trial court, in reaching its judgment, had to surmise that a bartender at The Extremes sold or served Spradlin alcohol; however, other scenarios exist that are as plausible. For example, it is just as possible that someone of legal drinking age purchased the drinks for Spradlin or that she had fraudulently obtained a bracelet with a false identification card. There is no evidence to rule out such possibilities, which are also speculative, but no more so than the claim that she was sold or served alcohol by the bartenders at The Extremes.
As to the expert opinion of Bynum regarding Spradlin's level of intoxication while she was at The Extremes, even if accepted, his opinion only proves that she was intoxicated during the time. It lends no support (without additional conjecture by the fact-finder) to the element of whether Mughal breached his duty to Spradlin or whether Spradlin consumed alcohol after leaving The Extremes. Again, to reach the conclusion that Mughal breached a duty to Spradlin would require speculation that Spradlin was intoxicated as a sole result of being sold or served alcohol by employees of The Extremes, of which there is no evidence. Thus, Colgate failed to meet her requisite burden of proof. Such a finding pretermits a discussion of the remaining elements under the duty/risk analysis.
Resultantly, there is no need to address the additional assignment of error raised by Mughal regarding the trial court's denial of the exception of non-joinder of an indispensable party. Moreover, our finding herein renders moot the appeal brought by Colgate on the issue of the adequacy of the money damage award. Said appeal is, therefore, dismissed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Rita Colgate is reversed and costs of this appeal are assessed to her.
REVERSED AND DISMISSED.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring.
I respectfully concur in the decision of the majority.
Contrary to the majority's conclusion that Mughal did not breach a duty to Spradlin, I find that the trial court could conclude that such a breach occurred. Nevertheless, I do not find that the defendant's substandard conduct was shown by *1235 the evidence to be a cause-in-fact of the fatal accident.
Sandage testified that Spradlin "looked like she'd been drinking a lot" when he first met her in the nightclub. He stated that she was walking around holding two beers. Her statements indicated to Sandage that she had been at the club for a lengthy period of time prior to his arrival. The club had a bracelet system, as described in the majority opinion, to identify the underage patrons (below age 21).
The majority now determines that this evidence was not enough, even circumstantially, to establish that Spradlin was sold or served alcohol by the defendant. The majority relies on the specific wording of our criminal statutes prohibiting the sale and serving of alcohol to underage persons, as though a finding of negligence per se is mandatory. More broadly, a general tort duty of the bar owner exists with regard to this suspect class of persons. The court in Berg recognized "the public policy of this state to prohibit the sale of alcohol to minors and to protect minors and the general public from the effects of a minor's intoxication." 786 So.2d at 715. That policy should serve to define a broader duty that would place upon the defendant some responsibility for Spradlin's intoxication exhibited at The Extremes.
Nevertheless, I can agree that causation was not established in this case. Sandage left the defendant's club and drove without incident to another establishment where alcohol was also accessible. There was a significant amount of time between 2:00 a.m. and the 5:30 a.m. accident that was unaccounted for by the plaintiff's evidence. Most significantly, the details of the automobile accident were not presented at trial. Defendant's substandard conduct, therefore, was not shown to be the cause-in-fact of the accident.

APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS, CARAWAY, PEATROSS, and KOSTELKA, JJ.
Rehearing denied.
NOTES
[1] Although there are technically two appeals, there is only one docket number assigned.
[2] The Extremes was originally owned by Mughal's corporation, Mughal Brothers, Inc., which was the original plaintiff in Colgate's lawsuit. However, as will be explained in further detail herein, the corporation was subsequently dissolved.
[3] The sale or delivery of alcohol to those under the age of twenty-one is illegal, pursuant to La. R.S. 14:93.11(A), which specifically provides: Unlawful sales to persons under twenty-one is the selling or otherwise delivering for value of any alcoholic beverage to any person under twenty-one years of age unless such person is the lawful owner or lawful employee of an establishment to which the sale is being made and is accepting such delivery pursuant to such ownership or employment. Lack of knowledge of the person's age shall not be a defense.

Further, La. R.S. 26:90 also prohibits a retail dealer from selling or serving alcoholic beverages to a person under the age of twenty-one, or permitting a person under the age of eighteen to visit any place where alcoholic beverages or beer are the principal commodities sold, handled or given away. So considering, there is no prohibition from allowing those persons eighteen years of age from entering a bar, as long as those who are eighteen years old but under twenty-one are not sold or served alcohol.