937 So.2d 430 (2006)
Dennis SKINNER and Michael Childs
v.
DERR CONSTRUCTION COMPANY, Manhattan/Gibbs, Manhattan Construction Co., Gibbs Construction Co., Herman Binz & Sons Iron Works, Arthur Davis, Faia & Partners, Billes Manning Architects, Hewitt/Washington & Associates, Charles G. Lewis, et al.,
Shan Paulk
v.
Manhattan/Gibbs, Manhattan Construction Company, Gibbs Construction Company, Herman Binz & Sons Iron Works, Inc., Charles Lewis d/b/a Lewis Engineering.
Nos. 2005-CA-0816, 2005-CA-0817.
Court of Appeal of Louisiana, Fourth Circuit.
July 26, 2006.
*431 James E. Cazalot, Jr., New Orleans, LA, for Plaintiff/Appellant.
Scott G. Jones, Inabnet & Jones, L.L.C., Mandeville, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Plaintiff-Appellant, Shan Paulk, appeals the trial court's grant of Defendant-Appellee, Herman Binz & Sons Iron Works, Inc.'s motion for summary judgment, which dismissed Appellant's products liability claims against Defendant-Appellee for injuries he sustained during the construction of the New Orleans Arena. Plaintiff-Appellant also appeals the trial court's subsequent denial of his motion for a new trial.

FACT SUMMARY
This litigation centers on an accident that occurred during the construction of the New Orleans Arena. The general contractor, Manhattan/Gibbs, contracted with *432 Herman Binz & Sons Iron Works, Inc. ("Binz") to supply fabricated steel for the structure. The general contractor then contracted with the Derr Construction Company ("Derr") to erect the steel structure of the New Orleans Arena. Appellant Shan Paulk ("Paulk") was an employee of Derr.
On September 19, 1998, Derr employees were attempting to lift into place the steel framing for the Mezzanine level on one side of the structure. The steel was structural steel that had been fabricated and supplied by Binz. The framing resembled a giant drainage grate made of steel beams, and it had a length of 80 feet. The steel framing hung parallel to the ground, suspended by four cables attached to a crane. Derr had previously bolted the pieces of the steel frame together. After the structure was lifted into place, Appellant and two co-workers, Dennis Skinner and Michael Childs, were working aloft on the steel frame to make permanent connections with bolts to the main structure.
The steel frame suddenly collapsed causing the plaintiff and his coworkers to fall 19 to 30 feet to the concrete below. Specifically, the frame broke at the intersection of two steel beams, A761 and B761. As a result of the fall, all three sustained serious bodily injuries. Paulk remains disabled from working and under medical care today.

PROCEDURAL HISTORY
Paulk filed a Petition for Damages against various defendants including Binz on October 6, 2000. On January 27, 2004, Binz moved for summary judgment against Paulk alleging that no material facts remain in dispute about its liability.
The motion for summary judgment was heard by the trial court on August 27, 2004. A written judgment was entered without written reasons on September 8, 2004. Paulk filed a motion for new trial on September 20, 2004. The motion for new trial was heard on December 3, 2004. A written judgment was entered without written reasons on December 10, 2004 denying the motion for new trial. Paulk filed a notice of appeal covering both judgments on February 7, 2005, which was then signed on February 14, 2005.

ASSIGNMENTS OF ERROR
Appellant contends that the trial court erred in granting summary judgment when material facts remained in dispute as to the cause of the accident, and in denying Paulk's motion for new trial.

LAW AND ANALYSIS
The duty of a court of appeal is to review a summary judgment de novo, considering the same standards applied by the trial court in deciding a motion for summary judgment.[1] The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions.[2] A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law.[3] If the court finds that a genuine issue of material fact exists, summary judgment must be rejected.[4]
*433 The burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist.[5] At that point, the party opposing the motion must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).
This appeal asks us to determine whether the trial court appropriately granted summary judgment to Binz. Paulk alleges that the steel beam manufactured by Binz was unreasonably dangerous under the Louisiana Products Liability Act ("The LPLA"). The LPLA is the law governing the liability of a manufacturer for a product he produced, designed, or fabricated. La. R.S. 9:2800.54 provides:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.
Paulk claims that he is entitled to damages from the Binz under the LPLA because Binz's product was unreasonably dangerous in one of three ways: construction or composition; inadequate warning; or failure to conform to an express warranty. First, Paulk alleges that the steel was unreasonably dangerous in construction or composition, as provided under La. R.S. 9:2800.54(B)(1). La. R.S. 9:2800.55 elaborates:
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. La. R.S. 9:2800.55.
At the hearing, Paulk presented evidence from three expert witnesses. The first, William Bonefas, is a registered professional engineer and Vice President of a consulting structural engineering firm located in Fort Worth, Texas. Bonefas testified that the cause of the accident could be placed in one of four categories: (1) lifting forces, (2) material defects, (3) fabrication defects, or (4) modification to the product by the erector. The first and last causes would be attributable to Paulk's employer, Derr Construction, and categories (2) and (3) would be attributable to Binz.
Through the use of computer generated models, Bonefas eliminated lifting forces as a possible cause, and in a March 23, 1999 letter to Derr, he concluded that the collapse of the steel structure was not the result of overloading or the connection of *434 the beams. Specifically, Bonefas wrote, "[i]t is my professional opinion that failure of this plate is the result of some other phenomenon, possibly a material defect or a pre-existing crack in the plate."
Paulk's own testimony eliminated one of thesemodifications to the product by the erectoras a potential cause. Paulk was present when the steel arrived, he assisted in unloading the steel, and he was involved in putting the frame together, and Paulk argues that no modifications were made to the product by the erector.
Bonefas believed that the accident likely occurred because of either fabrication defects or material defects. However, he could not say with certainty what the exact cause was. Bonefas testified, "I have no physical or hard evidence of the plate not performing. Merely I concluded that the stress alone was not sufficient to do that, and I think I made mention that that would be something that would be warranted looking at."
Paulk also produced the testimony of Edward Cox. Cox is a Ph.D. and works for EPC Engineering Resources, Inc. in Dallas, Texas. In a March 31, 1999 letter to Derr, Cox wrote that he disagreed with an OSHA Citation and Notification of Penalty to Derr. In the citation, OSHA wrote that the platform collapsed due to overloading. Mr. Cox countered that "[n]o evidence of overloading has been found in platform itself, rigging, or lifting equipment. Conversely, the rigging, lifting equipment, and platform sections all exhibited considerable physical evidence of not being overloaded at the time of failure." In a May 13, 1999 letter to Derr, Dr. Cox noted that an examination of the initial failure site "revealed abnormal fracture feature and unusual deformation patterns."
Binz relied primarily on the testimony of Courtney Busch, a registered professional engineer in Louisiana and a metallurgical expert. Essentially, Busch found that no fabrication errors occurred, and that the platform collapsed due to loading forces. In his report, Busch concluded that "the plate . . . failed due to an overload force. No defects were found in the plate or the welding process that could have caused this type of gross overload failure."[6]
Busch's testimony was opposed by Joseph Skaggs, a metallurgical engineer who testified that the analysis performed by Courtney Busch on this connection was insufficient to rule out a material defect, fabrication defect or pre-existing damage to the connection. After reviewing the OSHA review and citations, witness statements, Courtney Busch's reports and deposition, and other information, Skaggs testified that the accident could have only been caused by applied force in the excess of the connector's design capacity, or a defect in the material, fabrication, or pre-existing damage due to the connection.
In sum, Binz's witness testified that overloading conclusively caused the accident. Paulk's witnesses testified that overloading was conclusively not a cause of the accident, and that a fabrication or material defect in the steel was a likely cause of the accident, but they could not testify as to what conclusively caused the accident. We believe that the sum of their testimony presented enough evidence to establish a genuine issue of material fact.
*435 Regarding the standard for summary judgment, the Supreme Court wrote:
A "genuine issue" is a "triable issue." More precisely, an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue.
Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94); 639 So.2d 730, 751 (internal citations and quotations omitted).
At issue in this case is Binz's responsibility for the accident that caused Paulk's injuries. Considering the conflicting evidence presented by experts Busch, Bonefas, Cox and Skaggs, reasonable persons could disagree on whether Binz is responsible for Paulk's injuries.
The Supreme Court has also written that:
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Simply put, a "material" fact is one that would matter on the trial on the merits.
Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94); 639 So.2d 730, 750-51 (internal citations and quotations omitted). Clearly, the cause of the accident is essential to Paulk's claim, would determine the outcome of the legal dispute, and would matter at trial. It is the critical fact at issue in this lawsuit.
Binz points out that opposition to a motion for summary judgment cannot prevail when it is based on pure speculation. Black's Law Dictionary defines speculation as "(t)he act or practice of theorizing about matters over which there is no certain knowledge." Black's Law Dictionary 1435 (Bryan A. Garner ed., 8th ed., West 2004).
The Louisiana Supreme Court recently stated that a witness's speculation on an issue was of no probative value in determining a motion for summary judgment when there was no sound basis for the speculation. We believe it is appropriate to provide a thorough analysis of the context of this statement. In Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04); 870 So.2d 1002, Eliud Santiago shot and killed his girlfriend, Annissa Jones, after she decided to return to her husband, Davy Jones. He also killed two of her and Davy Jones' daughters. Santiago then shot and killed himself. Davy Jones filed suit to recover damages sustained on behalf of himself and his minor children as a result of the death of Annissa Jones. Named as defendants were the Estate of Santiago and State Farm Insurance Company, the insurer providing homeowner's insurance coverage to Eliud Santiago.
State Farm filed a motion for summary judgment seeking to have plaintiffs' claim dismissed on the basis that the killing of Annissa Jones was not a covered occurrence under the insurance policy issued to Eliud Santiago and was specifically excluded by the intentional act exclusion. The trial court denied the motion for summary judgment, reasoning that the plaintiff had produced evidence that the shooting was not intentional. Specifically, Annissa Jones' eight year-old daughter Kaitly testified that she did not think the accident was intentional.
The court of appeal affirmed the judgment, but the Supreme Court reversed, holding that there was no genuine issue of material factclearly the shooting was intentional. The Supreme Court was moved by the "fact that more than one individual was shot, the fact that Annissa suffered two gunshot wounds to the head and another *436 to the arm, and the fact that there were no signs of a struggle and no defensive wounds on the body . . . Additional physical evidence includes three other deaths, all caused by gunshot wounds to the head." Jones v. Estate of Santiago, XXXX-XXXX, pp. 10-12 (La.2004); 870 So.2d 1002, at 1009-10.
The Supreme Court's treatment of Kaitly's deposition is relevant to the case at hand. The Court wrote:
Following a de novo review of Kaitly's deposition, one can only conclude that her statement characterizing the shooting as accidental is mere speculation. When her deposition is reviewed in its entirety, it is clear she was not privy to the facts which would enable her to testify the shooting was accidental. She stated many times that she did not actually see what occurred and could not remember anything. Her physical location at the scene at the time of the shooting cannot be determined by her testimony. Her deposition testimony consists of her belief as to what occurred rather than on personal knowledge of the events.
Jones v. Estate of Santiago XXXX-XXXX, p. 10 (La.4/14/04); 870 So.2d 1002, 1008-09. Thus, a motion for summary judgment should not be determined based on testimony that is "mere speculation."
The Fourth Circuit has also addressed speculative testimony used to oppose motions for summary judgment. In Haney v. Delta Petroleum Company, XXXX-XXXX, p. 5 (La.App. 4 Cir. 3/6/02); 811 So.2d 1200, 1204, this court wrote that summary judgment "may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."
We believe that the evidence produced by Paulk is distinguishable from the speculation produced in Jones and Haney. Paulk presented testimony from three witnesses. Some of the testimony presented by Paulk was speculative. Bonefas had no physical evidence to prove the suspicion that a material defect or a fabrication defect caused the accident. The testimony of each witness viewed individually might be considered mere speculation. However, collectively their testimony rises above the level of unsupported or mere speculation.
Bonefas, Cox, and Skaggs all testified that the accident was likely created by some error in construction or composition. Bonefas theorized on some certain knowledge. All three are engineers who performed extensive investigations into the cause of the accident.
 Bonefas testified the accident was caused by one of four reasons. He eliminated one of these, and witness testimony eliminated another, leaving fabrication defects or material defects as the likely cause, which creates liability for Binz.
 Cox also testified that there was no evidence of overloading, and that the initial failure site "revealed abnormal fracture feature and unusual deformation patterns," which implies fabrication or material defects.
 Skaggs testified that Busch's testing methods were insufficient to rule out a material defect, fabrication defect, or pre-existing damage to the connection.
Three engineers testified that loading forces did not cause the accident, which leaves fabrication or material defect in the steel as the likely cause of the accident. Steel platforms do not normally collapse. We find that Plaintiff-Paulk's opposition to the motion for summary judgment rests on more than "mere speculation" or "unsupported speculation." In sum, we find that Paulk presented enough evidence at *437 trial to create a genuine issue of material fact.
Because this issue has been disposed of on the first assignment of error, we pretermit discussion of Paulk's other assignment of error regarding the motion for new trial, as well as his additional arguments regarding the first assignment of error.

CONCLUSION
For the reasons above, we find that the trial court improperly granted Binz's motion for summary judgment.
REVERSED AND REMANDED.
NOTES
[1] Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94); 634 So.2d 1180, 1183; Bank One, Nat'l Ass'n v. Velten, XXXX-XXXX, p.4 (La.App. 4 Cir. 8/17/01); 917 So.2d 454, 457.
[2] Two Feathers Enterprises, Inc. v. First Nat'l Bank of Commerce, XX-XXXX-XXXX p. 3 (La. App. 4 Cir. 10/14/98), 720 So.2d 398, 400.
[3] La. C.C.P. art. 966.
[4] Oakley v. Thebault, 96-0937, p. 3 (La.App. 4 Cir. 11/13/96); 684 So.2d 488, 490.
[5] Id.
[6] He also found that "The plate designated as A746 failed due to a torsional overload. "The plate designated C758 failed due to an overload twisting moment. No defects were found in the plate or the welding process that could have resulted in this type of failure." "The web of F757 was sheared by the bolts due to an overload tensile force. No defects were found in the web."