STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**16-462 consolidated with 16-640 and 16-722**

**BRYAN REED**

**VERSUS**

**COWBOY'S WESTERN STORE AND TRAILER SALES, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2013-2661, DIVISION B
HONORABLE JULES DAVIS EDWARDS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and David E. Chatelain[\*], Judges.

**AFFIRMED.**

**Raymond C. Jackson, III**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**Telephone:  (337) 291-1000**
**COUNSEL FOR:**
    **Defendants/Appellees – Cowboy's Saloon, L.L.C. and Larry Bacque, Sr.**

---

[\*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Jeffrey A. Rhoades**
**Swift & Rhoades**
**P. O. Box 53107**
**Lafayette, LA 70502-3107**
**Telephone:  (337) 572-9877**
**COUNSEL FOR:**
        **Defendants/Appellees – Cowboy's Saloon, L.L.C. and Larry Bacque, Sr.**

**James Allen Lochridge, Jr.**
**Voorhies & Labbé**
**P. O. Box 3527**
**Lafayette, LA 70502-3527**
**Telephone:  (337) 232-9700**
**COUNSEL FOR:**
        **Defendants/Appellees - Larry Bacque, II and Bac Three, Inc.**

**Patrick Daniel**
**Daniel & Associates**
**2409 Commerce Street**
**Houston, TX 77003**
**Telephone:  (713) 589-3539**
**COUNSEL FOR:**
        **Plaintiff/Appellant - Bryan Reed**

**John E. McElligott, Jr.**
**Kevin M. Dills**
**Robert D. Felder**
**Jami L. Lacour**
**Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards, LLP**
**810 South Buchanan Street**
**Lafayette, LA 70501**
**Telephone:  (337) 237-1660**
**COUNSEL FOR:**
        **Defendant/Appellee - Founders Insurance Company**

**Peter A. Bourgeois**
**Blake W. Bourgeois**
**Galloway, Johnson, Tompkins, Burr & Smith**
**One Shell Square**
**701 Poydras Street – 40th Floor**
**New Orleans, LA 70139**
**Telephone:  (504) 525-6802**
**COUNSEL FOR:**
        **Defendant/Appellee - Essex Insurance Company**

**THIBODEAUX, Chief Judge.**

Bryan Reed appeals the trial court's judgment granting summary judgment and sustaining an exception of res judicata in favor of Cowboy's Western Store and Trailer Sales, Inc., Founders Insurance Company, Larry Bacque, Sr., Cowboys Saloon, L.L.C., Essex Insurance Company, and Bac Three, Inc. (collectively, "Cowboys"). Mr. Reed was injured when his tractor was rear-ended by a vehicle driven by Megan Smith, who was under the age of 21. He alleges that Ms. Smith was impaired from a night of drinking alcohol at Cowboys, a bar. Finding that Mr. Reed did not controvert Cowboys' expert affidavit, which attested that Ms. Smith was not impaired, the trial court granted Cowboys' Motion for Summary Judgment. The trial court also later sustained an Exception of Res Judicata. There, Cowboys argued that claims alleged in Mr. Reed's Fourth Amended Petition, which was filed after the Motion for Summary Judgment was filed, were barred. Mr. Reed appeals both judgments. The appeals have been consolidated by this court. For the reasons that follow, we affirm both judgments.

## I.

### ISSUES

We must decide:

    (1)    whether the trial court erred in granting Cowboys' Motion for Summary Judgment.

    (2)    whether the trial court erred when it sustained Cowboys' Exception of Res Judicata.

## II.

## <u>FACTS AND PROCEDURAL HISTORY</u>

This matter is a vehicular collision that resulted in injury to Mr. Reed. The accident occurred during the early hours of the morning when Ms. Smith rear-ended the tractor that Mr. Reed was driving. Mr. Reed alleges that Ms. Smith, who was under the legal drinking age at the time, was impaired when the accident occurred and her impairment caused the accident. He further alleges that Ms. Smith was impaired from a night of consuming alcohol at Cowboys, which is a bar in Lafayette Parish. Ms. Smith did not receive a citation from the responding deputy. However, Mr. Reed was cited for operating his tractor without lights and was ultimately convicted for that infraction.

Mr. Reed named Cowboy's Western Store & Trailer Sales, Inc., Cowboy's Saloon, L.L.C., Bac Three, Inc., Larry Bacque, Sr., and Ms. Smith in his original petition. He later amended his petition to add insurance defendants, Founders Insurance Company, Essex Insurance Company, and James River Insurance Company.

Cowboys filed a Motion for Summary Judgment before the trial court. After the Motion for Summary Judgment was filed, but before it was heard, Mr. Reed filed a Fourth Amended Petition. The amended petition added claims against persons who allegedly gave Ms. Smith alcohol and a spoliation claim against her parents for disposing the vehicle after the accident. It also asserted a claim against Cowboys for a failure to supervise its employees.

The trial court granted the motion and dismissed the claims finding that Mr. Reed failed to rebut Cowboys' expert affidavit, which attested that Ms. Smith was not impaired at the time of the accident. The trial court's judgment was

2

amended by consent of the parties to add James River Insurance, Founders Insurance Company, and Essex Insurance Company, none of whom was a party to the motion. The trial court also later sustained Cowboys' Exception of Res Judicata finding that the claims alleged in the Fourth Amended Petition were barred by the court granting summary judgment.

Mr. Reed filed three appeals, two of which challenge the trial court granting summary judgment and its amended judgment. The third challenges the trial court sustaining the exception of res judicata. This court consolidated the three appeals.

## III.

## SUMMARY JUDGMENT

### A.    Standard of Review

The grant or denial of a motion for summary judgment is reviewed de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, p. 4 (La. 2/26/08), 977 So.2d 880, 882-83.

### B.    Law and Discussion

Mr. Reed contends that the trial court improperly granted the Motion for Summary Judgment.[1] He argues that the trial court's reasoning improperly disregarded lay witness testimony who attested that Ms. Smith was impaired. Mr. Reed argues that supreme court jurisprudence and La.Code Evid. art. 701 allow lay

---

[1]Case No. 16-462 and 16-640 both relate to the trial court granting summary judgment. The parties assert similar arguments in their respective briefs for each appeal. Thus, the cases will be considered under one heading. We do note that 16-462 relates to a judgment that later was amended by the trial court. The amended judgment, which was agreed-to by the parties, is the base of 16-640. We only considered the amended judgment in making our ruling.

witnesses to testify regarding their opinion whether a person is intoxicated. Thus, the lay witnesses' testimonies create questions of fact concerning Ms. Smith's impairment that precludes summary judgment. Instead, the trial court reasoned that Cowboys' expert affidavit was uncontroverted and granted summary judgment.

Further, Mr. Reed contends that Cowboys had a duty to prohibit minors from possessing and consuming alcohol on their premises. Mr. Reed also contends that the trial court erred by admitting the expert affidavit of Dr. William George because it did not meet the *Daubert* standard of reliability.

Finally, he argues that the trial court erred by not granting him leave to file his sur-reply. Because Cowboys submitted new evidence in their reply brief, Mr. Reed argues that Cowboys violated La.Code Civ.P. art. 966(B)(3).[2] Consequently, the reply brief should have been converted into a new motion for summary judgment for which he was entitled to respond. What Mr. Reed overlooks, however, is that subsection (B)(3) was effective on January 1, 2016; the Motion for Summary Judgment was filed on December 17, 2015; and, therefore, this subsection is inapplicable.

In opposition, Cowboys argue that the trial court properly dismissed the matter because Mr. Reed did not provide evidence or testimony to rebut their expert. Thus, Mr. Reed could not establish that Ms. Smith was impaired at the time of the accident and that her impairment was the cause. Further, the testimonies of Mr. Reed's lay witnesses were speculative, and there is no clear evidence that Ms. Smith was impaired. They also maintain that it was within the

---

[2]This article states, "[a]ny reply memorandum shall be filed and served in accordance with Article 1313 not less than five days prior to the hearing on the motion. No additional documents may be filed with the reply memorandum." La.Code Civ.P. art. 966(B)(3).

trial court's discretion to deny Mr. Reed's sur-reply as it was filed after business hours the Friday before the Monday morning hearing.

Cowboys contend that its expert affidavit meets the *Daubert* standard as it outlines the methodology used. They also contend that they did not have a duty to patrol their property to ensure that Ms. Smith did not possess or consume alcohol.

Louisiana has adopted a duty-risk analysis to determine whether to impose liability in a tort action. The duty-risk analysis requires consideration of five separate elements, all of which must be met for Mr. Reed to recover. The duty-risk analysis requires Mr. Reed to establish that: (1) Cowboys had a duty to meet a certain standard of conduct (the duty element); (2) Cowboys' conduct failed to meet that standard (the breach element); (3) the substandard conduct was a cause-in-fact of his injuries (the cause-in-fact element); (4) the substandard conduct was the legal cause of his injuries (the scope of liability or scope of protection element); and (5) that he suffered actual damages as a result of the breach (the damages element). *Bonin v. Ferrellgas, Inc.*, 03-3024 (La. 7/2/04), 877 So.2d 89.

Mr. Reed focuses primarily on the causation element. However, our view is that this case turns on whether Cowboys owed a duty and whether they breached that duty. Mr. Reed contends that Cowboys had a duty to ensure underage patrons did not consume or possess alcohol on their premises. Cowboys argue that no such duty exists, and they were only obligated not to sell or serve Ms. Smith alcohol.

Mr. Reed cites La.R.S. 26:90, La.R.S. 26:286, and the Lafayette Government Ordinance 6-13 to support his position. He argues that these polices

5

impose a duty on an alcohol permit holder to prohibit possession and consumption of alcohol by underage patrons. The court will address each in turn.

First, La.R.S. 26:90 and 26:286 regulate alcohol permit holders. In part, they make it unlawful for a vendor to sell or serve alcohol to patrons under the age of 21. The pertinent portion of each statute has the same language. They state that it is unlawful to "[s]ell, offer for sale, possess, or permit the consumption on or about the licensed premises of any kind or type of alcoholic beverage, the sale or possession of which is not authorized under his permit, except as provided for in R.S. 26:793(A)(5)."[3] La.R.S. 26:90(A)(5); 26:286(A)(5).

Mr. Reed draws attention to the words "possess or permit the consumption on or about the licensed premises" in his brief. He implores us to determine that this phase creates a duty for vendors to patrol its premises for underage drinking. However, it is clear from the text of the statutes they relate to the *type* of alcohol that a vendor can sell or possess based on its permit classification. They do not mention whether a vendor has a duty to supervise to ensure that underage patrons do not consume or possess alcohol.

Second, Lafayette Government Ordinance 6-13(c) makes it unlawful in the parish for an alcohol permit holder to allow an underage person to possess alcohol on its premise. In pertinent part, the ordinance states "[i]t shall . . . be unlawful for any person required to hold an alcoholic beverage permit issued pursuant to this chapter to allow and/or permit anyone under 21 years of age to be in public possession of any alcoholic beverage[.]" Lafayette Government Ordinance 6-13(c). Violation of this ordinance is punishable "by a fine not exceeding $500.00 or imprisonment for a term not exceeding six months, or both

---

[3]Louisiana Revised Statutes R.S. 26:793(A)(5) regulates homebrewed beverages.

such fine and imprisonment, for each violation." Lafayette Government Ordinance 1-9; *see also* Lafayette Government Ordinance 6-3. The establishment's owner and/or the permittee could also be subject to revocation or suspension of his or her permit. Lafayette Government Ordinance 1-9(d).

The court's reading of the ordinance reveals that it is a penal law that subjects the permit holder to penalties. It does not impose a heightened duty under tort law to surveil an establishment to ensure that underage patrons do not consume alcohol.

Further, jurisprudence holds that an alcohol vendor does not have a heightened duty to patrol its establishment to prevent underage drinking. For example, in *Sparrow v. Wheeler*, 10-21 (La.App. 1 Cir. 6/11/10), 2010 WL 2342758, after drinking at a bar, an underage patron was involved in a vehicular accident that resulted in injury to the plaintiff. There was no evidence that the bar sold or served alcohol to the underage patron. Instead, the plaintiff argued that the bar had a heightened duty to ensure that underage patron did not obtain alcohol while at the bar.

The court disagreed and held that summary judgment was appropriate. It concluded that the plaintiff did not establish that the bar sold or served alcohol to the underage patron the night of the accident. It further reasoned that "[t]o the extent that plaintiffs ask this court to create and impose a heightened duty herein, we find no support and decline to do so." *Id.* at *3.

Similarly, in *Colgate v. Mughal Brothers, Inc.*, 36,754 (La.App. 2 Cir. 1/29/03), 836 So.2d 1229, the second circuit held that a nightclub was not liable because there was no evidence that it sold or served alcohol to an underage patron who was later in a fatal, single-car accident. There, the mother of the decedent

brought action against the nightclub where her daughter consumed alcohol the night of the accident. The mother argued that the nightclub was negligent because it failed to prevent the sale of alcohol to her daughter and/or allowed others to furnish her with alcohol.

There was no evidence that the nightclub sold her alcohol. Instead, a witness testified that he saw her take two glasses of beer from the bar. The witness did not see her pay for the beers nor did he see a bartender hand them to her. The trial court held that the nightclub was liable.

The second circuit reversed. It determined the nightclub had a duty not to sell or serve alcohol to underage patrons. However, there was only speculative evidence that it breached that duty. It stated that for the trial court to reach its decision it had to conclude that the nightclub served or sold her alcohol.

The appellate court reasoned other plausible scenarios existed, such as someone of legal drinking age buying her drinks or her fraudulently obtaining a bracelet, which the nightclub used to identify patrons of drinking age, with false identification. The court reasoned that "to reach the conclusion that [the nightclub] breached a duty to [the decedent] would require speculation that [the decedent] was intoxicated as a sole result of being sold or served alcohol by employees of [the nightclub], of which there is no evidence." *Id.* at 1234. The court determined that her action of taking two glasses of beer from the bar was insufficient to establish that the vendor sold or served her alcohol. *Id.* at 1229.

Mr. Reed cites case law that is unconvincing and distinguishable from the facts at hand. He cites *Kramer v. Continental Casualty Co.*, 92-1131 (La.App. 3 Cir. 6/22/94), 641 So.2d 557, for the proposition that a vendor has a duty to confiscate alcohol possessed by a minor. In that case, teenagers rented a hotel

8

room for a party, consumed alcohol, and became intoxicated. After receiving complaints, the hotel manager instructed security guards to expel the teenagers from the hotel. The security guards observed several teenagers possessing and consuming alcohol, including drinking from a 16-gallon keg. The security guards instructed the teenagers to vacate the premises, which forced them to drive home after a night of drinking alcohol. One of the teenagers was later involved in a single-car accident resulting in injuries to his passenger and himself. The court determined that "the [hotel] should have reasonably foreseen that injuries would be caused by an alcohol-related accident by a minor, who was allowed to drink and become intoxicated on its premises with its knowledge, and who was forced to drive in that condition by [the hotel]." *Id.* at 571.

*Kramer* did not involve an alcohol vendor selling or serving alcohol to someone under the legal drinking age, nor did it involve an argument to impose a heightened duty for an establishment to supervise its premise to prevent underage drinking. The ruling was based on: (1) sufficient evidence that the driver was intoxicated; (2) the security guards, who were off-duty sheriff deputies, had a duty to enforce the drinking law applicable to minors; and (3) the security guards, despite knowledge that the minors consumed alcohol, knowingly allowed the minors to drive. None of these instances exists here.

It is clear from the mentioned case law the only duty Cowboys had was to refrain from selling or serving alcohol to Ms. Smith. With regard to a breach of that duty, the record is void of evidence that a bar employee sold or served her alcohol. We are left only with speculation as to how Ms. Smith acquired the alcohol. "Probabilities, surmises, speculations, and conjectures are insufficient to prove negligence by a preponderance of the evidence." *Colgate*,

9

836 So.2d at 1234 (citing *Cangiano v. Forte Hotels, Inc.*, 00-40 (La.App. 5 Cir. 10/31/00), 772 So.2d 879, *writ denied*, 00-3254 (La. 01/26/01)).

As in *Sparrow* and *Colgate*, we decline to impose a heightened duty that Cowboys was obligated to patrol their premises continuously to ensure that underage patrons did not possess or consume alcohol by way of an unlawful mean (e.g. a person of legal drinking age purchasing a drink then transferring it to an underage person). A finding of no legal duty pretermits a review of the remaining elements under the duty/risk analysis.

Nonetheless, even arguing *arguendo* that duty and a breach of duty are established, Mr. Reed has not established causation—that Ms. Smith was intoxicated the night of the accident and her intoxication was the cause. Mr. Reed contends that his lay witnesses rebut Cowboys' expert affidavit to create a genuine issue of material fact. These lay witnesses, Mr. Reed argues, testified that Ms. Smith was impaired.

However, "a motion for summary judgment should not be determined based on testimony that is 'mere speculation.'" *Skinner v. Derr Constr. Co.*, 05-816, 05-817, p. 9 (La.App. 4 Cir. 7/26/06), 937 So.2d 430, 436 (citing *Jones v. Estate of Santiago*, 03-1424, p. 10 (La. 4/14/04), 870 So.2d 1002, 1008; *see also Keller v. Messina*, 05-745 (La.App. 3 Cir. 2/1/06), 921 So.2d 1162 (holding that defendant's testimony that plaintiff may have made a quick stop was speculative, and thus, insufficient to rebut the plaintiff's evidence that she was free from fault when the defendant rear-ended her).

The record reflects that two persons, Chris Darby and Ashley Burghdoff, each offered shifting testimony as to whether Ms. Smith was impaired.

For example, Mr. Darby, who was the last person to see Ms. Smith before the accident, testified that:

> Q: Okay. And when you dropped her off, did she appear to be intoxicated when you dropped her off
>
> A: Yes. She was. I mean we kind of sober up. I mean, you know.
>
> . . .
>
> Q: Okay. And what makes you think that she was intoxicated because you didn't know her very well, I mean was she slurring her words or?
>
> A: Pretty much just the way she acted, you know, you could tell that she [sic] must have been drinking something or may have drank something on the way home, I'm not sure

However, he also stated that:

> Q: All right the next question is: "Okay: And when you dropped her off did she appear to be intoxicated when you dropped her off?" What was your answer?
>
> A: "I mean she was sober up. But I mean I would say that she was more tired than, than drunk"

Ms. Burghdoff, who saw Ms. Smith approximately 30 minutes before the accident, testified that:

> Q: Was [your opinion that Ms. Smith was intoxicated] based on prior experience with Megan Smith? In other words, had you been with Megan Smith before when she was drunk, and that's what you were using to identify she was clearly intoxicated?
>
> A: I don't remember being with her when she was definitely drunk, but I have been around her enough sober to know the difference of when she was sober and when she was under the influence[.]
>
> Q: So there was no question in your mind she was under the influence of alcohol, based on your past experience with her?

11

A: Yes.

Conversely, when asked to explain her statement that Ms. Smith was "clearly intoxicated," she stated "[a]s of right now, I can't explain it because I don't remember. I don't remember – I didn't remember now . . . No I wasn't lying. But I – maybe I stated it wrong in my statement possibly by saying clear intoxicated."

The record is replete with other examples of inconsistent testimony. Their testimony can be summed up as Ms. Smith "could have" been impaired but they are not certain. Testimony of this type is speculative because it fails to indicate that Mr. Reed could be able to establish at trial that Ms. Smith was impaired. Thus, the testimony of Mr. Darby and Ms. Burghdoff is insufficient to create a genuine issue of material fact in light of Cowboys' uncontroverted expert affidavit.

Mr. Reed's argument that the expert affidavit is unreliable is also unconvincing. He argues that the expert affidavit was conclusory and not based on personal knowledge. The inadequacy of an affidavit is a "formal defect," and the opponent waives the defect unless he or she files a motion to strike or otherwise objects to the affidavit. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181 (La. 2/29/00), 755 So.2d 226. Mr. Reed did not file a motion to strike the expert affidavit, but did object during the hearing on Cowboys' Motion for Summary Judgment.

The supreme court adopted the *Daubert* standards as those to be utilized by Louisiana courts. *State v. Foret*, 628 So.2d 1116 (La.1993). At the summary judgment stage, the *Daubert–Foret* standard should be considered by the trial judge in deciding whether to admit expert opinion evidence. *Indep. Fire Ins.*

*Co.*, 755 So.2d at 226. In performing its gatekeeping analysis at the summary judgment stage, the court: (1) cannot make credibility determinations, (2) must "focus solely on the principles and methodology, not on the conclusions they generate," (3) "must draw inferences from the undisputed facts which are most favorable to the party opposing the motion," and (4) "should only grant a motion to strike when the evidence presented established that there is no genuine issue of material facts in dispute." *Id.* at 236 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S., 579, 595, n. 6 (1993)). Further, our supreme court has held that affidavits from experts that are not based on personal knowledge are admissible to support or defend against a motion for summary judgment if the above principles are met. *Indep. Fire Ins. Co.*, 755 So.2d at 226.

In examining the expert affidavit submitted by Dr. George, we conclude that it is not conclusory. Contrary to Mr. Reed's argument, his affidavit includes his methodology. In reaching his determination, Dr. George examined twenty-two pieces of evidence, including the deposition of Ms. Smith, Mr. Darby, and Ms. Burghdoff, and the accident report written by the responding deputy. He examined Ms. Smith's body weight, the amount of alcohol that she consumed that night (two beers and one mixed drink), and the time that elapsed between her leaving the bar and the accident (four hours). Based on his expertise as a scholar in toxicology and pharmacology, he concluded that Ms. Smith was neither intoxicated nor impaired when the accident occurred. Accordingly, we find that the trial court did not err in overruling Mr. Reed's objection to Cowboys' expert affidavit. Further, we conclude that the trial court's reliance on the expert affidavit was proper.

Finally, we hold that the trial court did not err by not considering Mr. Reed's sur-reply. The motion for leave to file the brief was filed via fax after business hours on the Friday before the Monday morning hearing. At the time of the hearing, the late-filed memorandum was not before the court.

We note that although the sur-reply was filed via fax, an original was not filed into the record within seven days as required by La.R.S. 13:850(B). We also note that even if the trial court had granted leave to file the sur-reply, the memorandum and attached affidavit do not advance an issue in this matter. Mr. Reed's memorandum restates previous arguments. Additionally, the attached affidavit from Brian Frist, a forensic pathologist, was deficient because it was not notarized. *Durham v. Brown*, 14-1042 (La.App. 3 Cir. 3/4/15), 159 So.3d 1149; *Gorman v. Miller*, 12-412, p. 8 (La.App. 1 Cir. 11/13/13), 136 So.3d 834, 841 ("A document that is not signed and notarized cannot be considered as an affidavit."); *see also Landry v. Stein*, 497 So.2d 1075, 1077 (La.App. 5 Cir. 1986) ("Unsworn and unverified documents are not of sufficient evidentiary quality to be given weight in determining whether there is a genuine issue of material fact.").

Dr. Frist first states that based on the evidence he reviewed, he is uncertain of the amount of alcohol Ms. Smith consumed. Nevertheless, he later concluded that this indeterminate amount of alcohol caused Ms. Smith to become impaired.[4] He does not include the methods (such as an examination of body weight, time elapsed, or drinks consumed) that he used to reach his conclusion. His testimony in no way rebuts Dr. George's opinion that Ms. Smith was not

---

[4]In full, Dr. Frist states: "It is my opinion the amount of alcohol consumed by Megan Smith during the early morning hours of June 22, 2012 would have impaired her and affected her ability to operate a motor vehicle, her judgment, her reaction time, her decision making, her vision, and would have contributed to the subject accident."

impaired at the time of the accident. Therefore, we conclude that the trial court did not err by not considering the sur-reply. Further, even if it did consider the sur-reply, it does not advance an issue in this matter.

Accordingly, for the reasons stated, we conclude that the claims against Cowboys were properly dismissed via summary judgment by the trial court.

IV.

**EXCEPTION OF RES JUDICATA**

A.    <u>Standard of Review</u>

The parties dispute the standard of review that should be applied. Mr. Reed acknowledges that appellate courts typically review an exception of res judicata using the manifest error standard. However, he asserts that a de novo review is required because the trial court did not make a factual determination in reaching its ruling; thus, the res judicata effect is a question of law.

Cowboys ask this court to apply the manifest error standard. It notes that a ruling sustaining an exception of res judicata is reviewed using the manifest error standard when the exception is raised before the case is submitted.

"The standard of review of a ruling sustaining an exception of res judicata is manifest error when the exception is raised prior to the case being submitted and evidence is received from both parties." *Jones ex rel. Jones v. GEO Grp., Inc.*, 08-1276, p. 4 (La.App. 3 Cir. 4/1/09), 6 So.3d 1021, 1024; *see also Allain v. Tripple B Holding*, LLC, 13-673, p. 9 (La.App. 3 Cir. 12/11/13), 128 So.3d 1278, 1285 ("An appellate court reviews the exception under the manifest error standard of review if evidence is introduced in support or contravention of the exception.").

15

However, in the event "the trial court does not make any factual determinations, but rather the issue is whether a prior judgment bars an action, '[t]he res judicata effect of a prior judgment is a question of law that is reviewed de novo.'" *Haybeych v. JPMorgan Chase Bank, N.A.*, 15-90, p. 3 (La.App. 3 Cir. 11/4/15), 180 So.3d 491, 494 (quoting *Morales v. Parish of Jefferson*, 10-273, p. 6 (La.App. 5 Cir. 11/9/10), 54 So.3d 669, 672).

During the hearing, Mr. Reed attempted to admit a number of items, including the petitions that are at issue, his opposition to the Exception of Res Judicata, and a number of exhibits, including the sur-reply to Cowboys' Motion for Summary Judgment, evidence concerning Dr. William George's unreliability, and affidavits from Jody Fontenot and Dr. Brian Frist. The petitions, his opposition to the Exception of Res Judicata, and his opposition to Cowboys' Motion for Summary Judgment were admitted without objection. Cowboys objected to the remaining items. The court sustained Cowboys' objections and thereafter sustained the exception.

It is unclear whether the trial court considered any exhibits or evidence when it rendered its ruling or simply examined the petitions to determine the res judicata effect of granting summary judgment. Although the judgment notes the court made its ruling after "considering the pleadings . . . the applicable law, evidence submitted, [and] arguments of counsel," the trial court sustained the objections and granted the exception without oral or written reasons. Therefore, because it is unclear if the court made a factual finding when it rendered its ruling, we will conduct a de novo review.

## B.    Law and Discussion

Mr. Reed argues that the trial court's ruling granting summary judgment did not include claims that were asserted in his Fourth Amended Petition, which was filed after the Motion for Summary Judgment.   Thus, they are not barred by res judicata.   Mr. Reed contends:  (1) that his new claims did not require an intoxication evaluation, which was the basis of the trial court granting summary judgment; (2) because the trial court improperly accepted Dr. George's affidavit as reliable, exceptional circumstances exist pursuant to La.R.S. 13:4232 to justify relief from the res judicata effects of the judgment; and (3) granting of summary judgment was not a final judgment for purpose of res judicata because it is the subject of this appeal.

In opposition, Cowboys maintains that the Fourth Amended Petition is barred by res judicata because:  (1) it restates the claims made in the Third Amended Petition with minor revisions, (2) the claims existed when the trial court signed its judgment; (3) the claims arose from the same transaction or occurrence that were the subject of the dismissed claims; (4) no exceptional circumstances exist; and (5) the judgment was final.

Louisiana Revised Statutes 13:4231 states:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the

17

time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The supreme court has established elements for courts to consider when deciding a res judicata issue. These elements include whether: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049. The "chief inquiry" is whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action. *Id.* at 1053.

In his Fourth Amended Petition, Mr. Reed alleges: (1) Ms. Smith's parents (Williams and Wendy Smith) spoliated evidence by destroying the vehicle she drove that night; (2) Cowboys failed to confiscate Ms. Smith's alcohol; (3) Dakota Armond, Chris Darby, and Chelsea Rodriguez acted as Cowboys' agents by buying her drinks until she became intoxicated; and (4) Cowboys failed to supervise its employees.

Based on our de novo review, the claims asserted in the Fourth Amended Petition against Cowboys clearly arose out of the same transaction or

18

occurrence (the accident and Ms. Smith's alleged impairment) that formed the basis of the previous petitions. In fact, many of the allegations in the amended petition simply rephrase previous claims with insignificant revisions. For example, Mr. Reed changed "allowing minors to obtain alcohol while under its care [sic] custody, and control" to "allowing minors to obtain *and receive* alcohol while under its care [sic] custody, and control." Further, all of the claims in the subject amended petition against Cowboys arise from the same nucleus of facts previously alleged and existed when the trial court issued its judgment.

Additionally, the court's judgment is clearly a final judgment for res judicata purposes. "[A] judgment becomes final once signed by the trial judge unless reversed on appeal." *In re Succession of Bernat*, 13-277, p. 7 (La.App. 3 Cir. 10/9/13), 123 So.3d 1277, 1283, *writ denied*, 13-2640 (La. 2/7/14), 131 So.3d 865. Thus, the judgment was final on March 7, 2016, unless it is later reversed. We also decline to hold that exceptional circumstances exist to justify relief from the res judicata effect of the judgment. No such circumstances exist for the reasons stated in this opinion, mainly that the trial court was correct in relying on Cowboys' expert affidavit and not considering Mr. Reed's sur-reply.

The claims against the newly inserted defendants also do not alter this court's analysis. Those claims, that Ms. Smith's parents spoliated evidence and that her friends purchased drinks for her, do not involve any duty that Cowboys owed. Nor do they impose liability on Cowboys if proven. In short, there are no new claims in the Fourth Amended Petition relevant to Cowboys' alleged conduct that arises out of a different transaction or occurrence. Accordingly, based on our de novo review, Cowboys' Exception of Res Judicata was properly sustained by the trial court.

## V.

## **CONCLUSION**

For the foregoing reasons, the trial court's rulings are affirmed.  Costs of this appeal are assessed to Bryan Reed.

**AFFIRMED.**